# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 9, 2016          Decided December 9, 2016

No. 15-5238

RONALD M. SMITH,
APPELLANT

v.

UNITED STATES OF AMERICA, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01679)

---

*Gregory L. Lattimer* argued the cause and filed the briefs for appellant.

*W. Mark Nebeker*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *R. Craig Lawrence* and *Marian L. Borum*, Assistant U.S. Attorneys.

Before: PILLARD, *Circuit Judge*, and EDWARDS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

Concurring opinion filed by *Senior Circuit Judge* EDWARDS.

RANDOLPH, *Senior Circuit Judge*: Ronald M. Smith sued the United States and two United States Capitol Police Officers – Corey Rogers and Lawrence O. Anyaso. Smith's complaint alleged false arrest, malicious prosecution, intentional infliction of emotional distress, and, against the officers, a violation of his rights under the Fourth Amendment to the Constitution. He sought $5,000,000 in compensatory and punitive damages.

The district court, K.B. Jackson, J., in a comprehensive opinion, granted summary judgment in favor of the defendants. *Smith v. United States*, 121 F. Supp. 3d 112, 115 (D.D.C. 2015). Smith's main arguments on appeal are that the court erred in deciding that no material facts were in dispute and in refusing to allow Smith to conduct discovery before the court ruled on the defendants' summary judgment motion.

Smith's complaint alleged that while he was working for a federal agency, he drove several agency officials to Capitol Hill on November 5, 2009. The area surrounding the Capitol and the Senate and House office buildings is heavily guarded, with barricades at the entrances to the Capitol grounds, some of which are retractable to allow authorized vehicles to enter. When Smith pulled into the driveway approaching one of these attended barricades to drop off his passengers, Officer Rogers walked over to him. According to the complaint, Officer Rogers "began to chastise and yell at him for dropping off his passengers at that location." Compl. ¶ 7. A heated conversation ensued. Smith then made a U-turn and left the area. Officer Rogers radioed other officers, stating – according to the complaint – that Smith's car struck the officer's leg as Smith drove away. A few minutes later, Officer Anyaso arrested Smith for assault with a deadly weapon and assault on a police officer. The complaint further

alleged that Smith spent the night in jail. The United States Attorney charged Smith with assault on a police officer, a misdemeanor offense, D.C. CODE § 22-405, and offered him a plea bargain, reducing the crime to simple assault, which Smith did not accept. Five months later, in April 2010, the government moved to dismiss the charges against Smith, a motion the Superior Court granted with prejudice.

The defense filed a motion to dismiss or, in the alternative, for summary judgment, countering the complaint with a video recording (no audio) of the incident and an audio recording of Officer Rogers' radio transmission. The government had provided Smith with copies of these recordings while his criminal case was pending and Smith's complaint in this case relied on some of this material. The audio recording, which triggered Smith's arrest, contradicted what Smith alleged in his complaint, as he later admitted. *Smith*, 121 F. Supp. 3d at 116 n.2. Officer Rogers did not report on the audiotape that Smith's car hit him. In the recording, Officer Rogers stated that Smith "intentionally almost struck this officer." Audio tape: U.S. Capitol Police Dispatch (Nov. 5, 2009). The video also contradicted Smith's complaint. It shows Officer Rogers, in full uniform, turning away from Smith's car and walking back toward his duty post. At this moment, the video "captured Smith looping around and pulling away aggressively . . . [clearly showing] that Smith drove the car toward [Officer] Rogers, and that the passenger side of Smith's car was close to [Officer] Rogers when the car passed by." *Smith*, 121 F. Supp. 3d at 115-16. Smith pulled away from the driveway "much faster than he pulled in, and . . . drove in the confined area aggressively and at a higher rate of speed than either of the two vehicles that had entered the checkpoint" during the encounter. *Id.* at 120-21.

Smith sued under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674, in his action against the United States, and

pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971), in his Fourth Amendment claim against the officers. Under District of Columbia law, simple assault has three elements: "(1) an act on the part of the accused (which need not result in injury); (2) the apparent present ability to injure the victim at the time the act is committed; and (3) the intent to perform the act which constitutes the assault at the time the act is committed." *Ruffin v. United States*, 642 A.2d 1288, 1295 (D.C. 1994). Physical contact is not required. As to assault with a dangerous weapon, the dangerous weapon can be a vehicle. *See Frye v. United States*, 926 A.2d 1085, 1096-97 (D.C. 2005). As to assault on a police officer, there is the added element "that the defendant knew or should have known the victim was a police officer." *In re J.S.*, 19 A.3d 328, 330 (D.C. 2011) (internal quotation marks eliminated).

The district court analyzed the governing law of the District of Columbia regarding the crime of assault and carefully reviewed the recordings, taking note of how they contradicted Smith's version of the events in his complaint. *Smith*, 121 F. Supp. 3d at 120-124. The court concluded that the defendant officers had probable cause to arrest Smith for assault with a deadly weapon and assault on a police officer. A "reasonable officer," the court concluded, "would have felt threatened by the proximity of the fast-moving vehicle" to his body. *Id.* at 121. The fact that Officer Rogers was in uniform was more than enough to establish the additional element of assault on a police officer. The existence of probable cause foreclosed not only Smith's false arrest, malicious prosecution and Fourth Amendment claims, but also his claim of intentional infliction of emotional distress based on his arrest. *See Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 989-90, 992-93 (D.C. Cir. 2014); *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C. 2007). The court also held that Smith had failed to allege any facts

outrageous enough to constitute intentional infliction of emotional distress. *Smith*, 121 F. Supp. 3d. at 125-26.

Smith argues that the court should not have granted summary judgment without giving him an opportunity to engage in discovery. Under Rule 56(d) of the Rules of Civil Procedure, if a party opposing summary judgment submits an affidavit showing that he cannot present facts justifying his opposition, the court "may" allow time for discovery. *Convertino v. U.S. Department of Justice*, 684 F.3d 93, 99-100 (D.C. Cir. 2012), holds that a Rule 56(d) affiant must, among other things, "outline the particular facts he intends to discover and describe why those facts are necessary to the litigation," and he must explain why he cannot provide evidence to counter his opponent's summary judgment motion. Smith did neither.

Smith had already been provided with the police reports and documents, statements, photographs, and audio and video recordings in connection with the case. But in his Rule 56(d) affidavit, Smith's lawyer stated only that the "plaintiff, at a minimum, needs to depose the named defendants, and the individuals who claim to be eyewitnesses." Joint Appendix 142. The affidavit gave no further explanation. Smith's memorandum opposing summary judgment stated: "At a minimum, the plaintiff needs to depose the two(2) [sic] named defendant officers to ascertain why they took the actions that they took at the time that they did so; and the plaintiff needs to depose [a non-party witness] about her actual observations which are somewhat at odds with the video." *Id.* at 116. (After viewing the video, this witness stated that it fairly reflected what she had seen.) Smith does not specify how, on this record with its undisputed facts showing probable cause, discovery regarding the officers' state of mind could create a material factual dispute. When pressed at oral argument, Smith's lawyer could offer no details about what additional material facts he expected to discover.

Because the affidavit failed to state with "particularity why additional discovery [was] necessary," the district court acted well within its discretion in denying Smith's request. *U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (quoting *Convertino*, 684 F.3d at 99). His lawyer's affidavit explained neither what Smith hoped to discover nor why such discovery was necessary. Such "vague" requests do not suffice under Rule 56(d). *See Folliard*, 764 F.3d at 29.

Smith also contends that the undisputed evidence shows that he drove away from, not toward, Officer Rogers. But he does not materially dispute what the video depicts – namely, that from right where Smith had parked facing the barricade, he pulled away from the curb and made a hasty U-turn to exit the driveway. In one sense, as Smith insists, he was driving "away" from Officer Rogers when he turned to exit. But the key point in support of the assault charge is that Smith quickly pulled forward and to the left, passing very close to the officer, before continuing his leftward 180 degree arc to exit the driveway. He did not adjust for the safety of the officer attending on foot by, for example, backing up first to leave a wider berth, or edging his car very slowly around until it was clear of the confined area. The video confirms as much, and Smith's claim of a "dispute" over whether he drove "toward" or "away" from the officer is about nomenclature, not evidence. There is no question that his car swiftly approached dangerously close to Officer Rogers.

Smith similarly argues that the district court erred in granting summary judgment because the video does not conclusively establish probable cause to arrest and charge him with assault. He emphasizes that the video does not show him striking Officer Rogers with his car. He disputes the speed of the car and its proximity to Officer Rogers and he denies that he intentionally drove his car toward the officer. These disputes, he argues, should have precluded summary judgment.

Smith again misunderstands both the elements of assault and effect of the video. As we have already mentioned, physical contact is not an element of the offense of assault. Smith's assertion about his intent is beside the point. What matters is not the "secret intent of the assaulting party," but instead how the "conduct and the attending circumstances" affect the assaulted party. *Sousa v. United States*, 400 A.2d 1036, 1044 (D.C. 1979) (internal quotation marks eliminated). Did Smith have an "apparent present ability to injure" Rogers? *Ruffin*, 642 A.2d at 1295. For probable cause, the officers needed only a reasonable belief that he did. *Brown v. United States*, 590 A.2d 1008, 1012 (D.C. 1991); *Nichols v. Woodward & Lothrop, Inc.*, 322 A.2d 283, 285 (D.C. 1974).

That the officers had such a reasonable belief is plain. We do not suggest that videos are always conclusive, because even a video can give a distorted view of a disputed scene. Nevertheless, in this case, the video indisputably shows Smith accelerating his car toward Rogers and nearly hitting him. Probable cause did not depend on how many miles per hour the car was traveling or whether the car actually touched the officer's leg. Smith may claim that he drove away from rather than toward Officer Rogers, but as we have said, this claim merely recharacterizes the events depicted in the video. The district court properly relied on the video, and we do as well. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007). With no material facts in dispute, probable cause became a question of law. *See Amobi*, 755 F.3d at 990; *Enders v. District of Columbia*, 4 A.3d 457, 469 (D.C. 2010). The district court's finding of probable cause, a finding with which we agree, foreclosed at least Smith's claims of false arrest, malicious prosecution and a violation of the Fourth Amendment's proscription against seizure of the person without probable cause. *Smith*, 121 F. Supp. 3d at 119-24; *Pitt v. District of Columbia*, 491 F.3d 494, 502 (D.C. Cir. 2007).

Smith devotes much of his attention – and attempts to escape the force of the video – by focusing on a supposed inconsistency in Officer Rogers' accounts of what happened. He points out that Officer Rogers stated on the police radio that Smith "intentionally almost struck" him, but later reported that Smith's car "brush[ed] the back" of his leg. Officer Rogers also sought medical care and claimed temporary disability. Smith contends that because the video shows that his car did not strike Officer Rogers, the officer's claims to the contrary are evidence of bad faith. That Officer Anyaso knew of these discrepancies and still made the arrest supposedly shows his own bad faith as well.

Yet Smith fails to connect any of this to the relevant legal doctrine. Citing *Edmond v. U.S. Postal Service General Counsel,* 949 F.2d 415, 419 (D.C. Cir. 1991), he tells us that his *Bivens* claims rely on something called "perjurer's liability." *Edmond* coined this phrase in a false arrest case, using it as a shorthand for an alleged Fourth Amendment violation by an official "who causes an indictment and consequent arrest by perjuring himself or arranging for the submission of perjured testimony before the grand jury." *Id.* No such circumstances are present in this case. Neither Officer Rogers nor Officer Anyaso testified before a grand jury and the video and the audio recording belie any claim that they did not have probable cause to arrest Smith. In addition, after a later phase of *Edmond*, which wound up in the Fourth Circuit for reasons unnecessary to describe, the court held that government officials have absolute immunity from civil liability for their grand jury testimony. *Lyles v. Sparks*, 79 F.3d 372, 378-79 (4th Cir. 1996). The Supreme Court has now agreed. *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012). And so we analyze Smith's *Bivens* action as one for unconstitutional false arrest and malicious prosecution. Like their common law counterparts, both of these claims require the absence of probable cause. *See Amobi*, 755 F.3d at 989, 993.

As to Smith's contentions regarding probable cause, he neglects the critical point that the "assessment of probable cause is an objective one. An arrest is supported by probable cause if, 'at the moment the arrest was made, . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the suspect has committed or is committing a crime." *Wesby v. District of Columbia*, 765 F.3d 13, 19 (D.C. Cir. 2014) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (alteration in original). Even if Officer Rogers' post-arrest statement that Smith's car "brushed" his leg meant something different than his pre-arrest radio transmission that Smith "almost struck" him, this would not affect the existence of probable cause to arrest and prosecute Smith based on the video. *See Wardlaw v. Pickett*, 1 F.3d 1297, 1304-05 (D.C. Cir. 1993); *District of Columbia v. Murphy*, 635 A.2d 929, 932 (D.C. 1993). The prosecutor's awareness of Officer Rogers' differing accounts also forecloses any argument that the officer's statement about being "brushed," as opposed to the video and audio recordings, led to the assault charge against Smith. The district court therefore properly granted summary judgment on the false arrest, malicious prosecution and *Bivens* claims.

We also agree with the district court's dismissal of Smith's claim that he was subjected to intentional infliction of emotional distress. The elements of this tort are: "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Minch v. District of Columbia*, 952 A.2d 929, 940 (D.C. 2008) (quoting *District of Columbia v. Thompson*, 570 A.2d 277, 289-90 (D.C. 1990)). Smith's distress from the arrest would not suffice because the officers had probable cause to arrest him. *Kotsch*, 924 A.2d at 1046. Nor is distress from the prosecution sufficient: the prosecutor charged Smith with assault on a police officer because of the evidence that Smith had

committed that offense. Smith cites *District of Columbia v. Tulin*, 994 A.2d 788 (D.C. 2010), arguing that the actions of Officers Rogers and Anyaso are highly similar to the offending conduct of the officer in that case. We disagree. In *Tulin*, an off-duty officer rear-ended the plaintiff, falsely reported on her radio that she was in distress, and pressured her subordinate to make an arrest. *Id.* at 800-01. Unlike in *Tulin*, however, there is undisputed evidence here establishing that the police had probable cause to arrest Smith. And, we agree with the district court that nothing here "rises to the level of 'outrageousness' as to be beyond all possible levels of decency and utterly incomprehensible in a civilized society." *Smith*, 121 F. Supp. 3d at 125 (quoting *Lyles v. Micenko*, 404 F. Supp. 2d 182, 187 (D.D.C. 2005)); *see, e.g.*, *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013).

*Affirmed.*

EDWARDS, *Senior Circuit Judge*, concurring: It is clear that the existence of probable cause defeats Smith's claims of false arrest/imprisonment and malicious prosecution. In my view, the question regarding Smith's claim of intentional infliction of emotional distress is more difficult, although I ultimately agree that we must dismiss this claim as well.

Nevertheless, there are aspects of this case that distress me, so I am stirred to write separately. The law does not always produce just results and this case may be a good example. As I see it, the incident between Smith and Officer Rogers was much ado about nothing — a needlessly absurd faceoff between a seemingly hot-headed citizen and a seemingly impetuous police officer. The citizen invariably loses in such exchanges, as Smith found out. Smith's imprudent action gave Officer Rogers just enough to assert probable cause, and the officer acted on it.

I do not doubt that Officer Rogers was within his rights to pursue someone like Smith, who appeared to have violated the law. What is distressing here is that, although he had probable cause to arrest Smith, Officer Rogers did much more. The officer embellished and fabricated his official reports and post-arrest statements, claiming that Smith's car brushed or grazed his leg. *See* JA 84, 130–32. These claims were untrue. And, of course, as the officer had reason to know, his fabrications were included in the papers filed with the prosecutor who ultimately charged Smith. *See* JA 72–76. In these circumstances, it would not have been implausible for Smith to claim that, separate and apart from the events giving rise to his arrest, Officer Rogers' dishonesty in recounting those events caused him great emotional distress.

A prosecutor is not obliged to charge a person merely because he has been arrested pursuant to probable cause. The prosecutor has discretion to weigh the evidence before her and decide whether to pursue the matter. Many factors may

affect a prosecutor's decision to press criminal charges. Therefore, in a case such as this, Smith might have reasonably claimed that Rogers' fabrications unduly influenced the prosecutor, resulting in him being charged, and then causing him to be engaged with the criminal justice system for months before the prosecution was finally dismissed as meritless. The net result of Smith's prolonged encounter with the criminal justice system – arguably attributable in no small part to Rogers' fabrications – was that he lost his job and his security clearance. Surely some might view this as enough to produce great emotional distress. In other words, given the impact that the criminal prosecution had on his life, Smith might have raised an emotional distress claim even if there was probable cause for arrest.

There are three problems with my analysis. First, the theory that I have propounded was not raised by Smith. So the issue was never joined, either at the trial court or on appeal. Second, because the issue was not properly raised, I have no grounds upon which to conclude that the prosecutor was duped by Rogers' fabrications. In other words, there is nothing in the record to indicate that the prosecutor relied on anything other than the original reason given by Rogers to support probable cause for Smith's arrest. Third, the standard for intentional infliction of emotional distress is very high and it is far from clear that Smith could meet this standard even on the most generous view of my theory of emotional distress. I am therefore obliged to concur in the judgment of the court.