# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 12, 2018          Decided May 17, 2019

No. 17-7147

LARRY HAYNES,
APPELLANT

v.

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-02086)

———

*David A. Branch* argued the cause and filed the briefs for appellant.

*Alison N. Davis* argued the cause for appellee. With her on the brief was *Meredith L. Schramm-Strosser*.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Larry Haynes had worked at the D.C. Water and Sewer Authority ("D.C. Water") for nearly thirty years when his position was eliminated as part of a

reorganization. D.C. Water offered Haynes a new position, but he was unable to obtain the license that position required and lost his job. Haynes alleges that he was treated differently than other employees affected by the reorganization due to his race, age, and learning disability, and that D.C. Water refused to accommodate his disability when it set deadlines for him to obtain the new license. He brings claims under various federal and D.C. civil rights statutes. The district court granted D.C. Water summary judgment, Haynes appealed, and we affirm.

I

D.C. Water is an independent agency of the D.C. government that provides water and sewage service to the District of Columbia. *Haynes v. DC Water is Life*, 271 F. Supp. 3d 142, 145 (D.D.C. 2017). Haynes started working at D.C. Water's predecessor organization in 1988. He was an "Electrical Equipment Repairer," grade "11/CDL." D.C. Water had long required Repairers in that position to hold a Class B Commercial Driver's License (CDL) and an apprentice electrician license, both of which Haynes possessed.

In 2014, D.C. Water consolidated several departments. Many positions were to remain the same after the reorganization, but some, including Haynes's, were to be eliminated or replaced. D.C. Water also discovered during this reorganization that D.C. law requires individuals holding apprentice electrician licenses—such as Haynes—to be directly supervised by master electricians. Problematically, D.C. Water did not employ enough master electricians to supervise all the Electrical Equipment Repairers holding apprentice electrician licenses, and, by mid-2014, determined that it would not be feasible to hire enough master electricians to do so. D.C. Water thus concluded that the Electrical Equipment Repairer position would be replaced by an

"Industrial Journeyman Electrician" position, and that individuals employed in the new position would be required to hold a more advanced journeyman electrician license that permitted additional unsupervised work.

After negotiations with the union representing affected employees, D.C. Water set a March 31, 2015 deadline for current Repairers to obtain their new licenses. Repairers who obtained the proper licenses on or before that date were to be retained as Industrial Journeyman Electricians, and those that did not would be fired. Beginning on September 2, 2014, Haynes and other Repairers attended training sessions offered by D.C. Water. Haynes alleges that around this time he told D.C. Water's Human Resources Department that he was dyslexic and needed more time to prepare for the exam, particularly because the training was a "refresher" course "not meant for first-time test takers." *Haynes*, 271 F. Supp. 3d at 148-49 (quoting Am. Compl. ¶ 8). Indeed, a journeyman electrician license generally requires years of training and supervised work. *Id.* Haynes, who is over fifty and black, alleges that younger, white electricians employed by D.C. Water received accommodations, including being given more time to obtain their licenses, not being subjected to the heightened license requirement, or being allowed to return to school for additional training. In contrast, D.C. Water refused to offer Haynes additional time or any other accommodation. Haynes completed the training offered by D.C. Water on December 9, 2014, but still felt unprepared for the license examination. Shortly thereafter, he began attempting to get medical documentation of his disability.

As of March 31, 2015, Haynes had failed to take the journeyman electrician exam and been unable to get medical documentation of his dyslexia. The next day, D.C. Water sent him a letter explaining that his failure to comply with the

licensing deadline meant that he could no longer perform any electrical work. D.C. Water did, however, give him sixty more days (until May 31, 2015) to pass the examination. Haynes was able to meet with a clinical psychologist on May 13, who diagnosed Haynes with a "[r]eading [d]isorder with impairment in word reading and reading comprehension," and a "[w]riting [d]isorder with impairment in written expression and spelling." Joint Appendix ("J.A.") 157. The psychologist concluded that it would be "reasonable" for Haynes's "current job . . . to accommodate for [these] reading and writing disabilities." *Id.* The record is silent as to whether Haynes presented this documentation to his employer.

What is clear is that on May 26, 2015, Haynes went to the Washington Field Office of the Equal Employment Opportunity Commission (EEOC). There he submitted an intake questionnaire describing what had happened at work and requesting additional counseling about whether to file a charge of discrimination. Later that day, he filed such a charge. On May 27, Haynes received a Notice of Right to Sue from the EEOC, which stated that "[b]ased upon its investigation," the agency was "unable to conclude that the information obtained establishe[d] violations of the" Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (ADA), although the EEOC did "not certify that [D.C. Water] [was] in compliance with the statute[]." J.A. 173. The notice also contained information about Haynes's right to file a lawsuit.

Haynes failed to complete the journeyman electrician license exam by the extended deadline of May 31, 2015 and was fired. At that time, there were six other Electrical Equipment Repairers in the same grade ("11/CDL") as Haynes. Five were black and one was white. Two of the black employees already had the necessary license for the new position before the reorganization. Prior to March 31, 2015,

one black Repairer and the white Repairer completed the exam. Along with Haynes, the remaining two black employees did not complete the licensing exam by March 31, 2015 and were given the additional sixty-day extension. They also appear to have been laid off.

On September 29, 2016, Haynes filed a pro se complaint in the district court, alleging that D.C. Water failed to accommodate his learning disability when it set the deadlines for him to acquire a new license. Haynes eventually retained counsel and filed an amended complaint that includes claims for breach of contract, disability discrimination in violation of the ADA, race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA). Haynes brings the same discrimination claims under the D.C. Human Rights Act, D.C. Code § 2-1401 *et seq.* (DCHRA). Shortly thereafter, D.C. Water moved for summary judgment. Haynes opposed the motion as premature, seeking discovery under Federal Rule of Civil Procedure 56(d). The district court denied Haynes's request for discovery and granted summary judgment to D.C. Water. *Haynes*, 271 F. Supp. 3d at 163.

Haynes appealed the district court's decision except as to the breach of contract claim. The district court had federal question jurisdiction over Haynes's Section 1981, ADA, Title VII, and ADEA claims under 28 U.S.C. § 1331. It exercised supplemental jurisdiction over Haynes's DCHRA claim under 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291.

6

II

We affirm the district court because (1) Haynes's ADA and DCHRA claims were untimely; (2) he failed to exhaust his administrative remedies prior to bringing his Title VII and ADEA claims; (3) it was within the district court's discretion to conclude that further discovery on Haynes's only potentially viable claim—the one brought under Section 1981—was unwarranted, given the lack of detail in Haynes's Rule 56(d) declaration; and (4) summary judgment on Haynes's Section 1981 claim was appropriate given the record before the district court.

A

We review the district court's grant of summary judgment de novo. *Epsilon Elecs., Inc. v. U.S. Dep't of Treasury, Office of Foreign Assets Control*, 857 F.3d 913, 918 (D.C. Cir. 2017). Summary judgment is warranted if the record, viewed in the light most favorable to the nonmoving party, demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Thompson v. District of Columbia*, 832 F.3d 339, 344 (D.C. Cir. 2016). We must "draw all reasonable inferences" in the nonmoving party's favor, *Thompson*, 832 F.3d at 344, and "[t]he evidence of the non-movant is to be believed," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. And although "the doctrine of equitable tolling ordinarily involves discretion on the trial judge's part," here the district court declined to toll the relevant statutes of limitations "based upon [its] finding that as a matter of law [Haynes's] evidence could not support invocation of the equitable tolling doctrine based upon [his]

mental state." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 n.4 (D.C. Cir. 1998). That means we review de novo that aspect of the district court's decision as well. *Id.* at 578.

Under Federal Rule of Civil Procedure 56(d), when a party moves for summary judgment and the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d). We review the district court's denial of a request for discovery for abuse of discretion. *Novecon Ltd. v. Bulgarian-Am. Enter. Fund*, 190 F.3d 556, 570 (D.C. Cir. 1999).

B

We first affirm the district court's conclusion that Haynes's ADA and DCHRA claims were untimely. Haynes received a Notice of Right to Sue from the EEOC on May 27, 2015. Under the ADA, he had ninety days from that date to file a complaint in court, meaning that the last day for Haynes to file an ADA claim was August 25, 2015. *See* 42 U.S.C. § 12117; 42 U.S.C. § 2000e-5(f). Under the DCHRA, he had one year from "the occurrence of the unlawful discriminatory practice" to bring suit. D.C. Code § 2-1403.04(a). The last allegedly discriminatory action taken by D.C. Water was Haynes's discharge on May 31, 2015, making May 31, 2016, the last possible day to bring suit under the DCHRA.

Haynes filed his first complaint on September 29, 2016, and he acknowledges that this date fell beyond each statute's deadline. He asserts, however, that his problems with reading and comprehension so affected his understanding of his legal rights that he was unable to handle his affairs, rendering him

"non compos mentis" at the time his right to file suit accrued and equitably tolling the filing deadline. Haynes Br. 19; *see also* Non Compos Mentis, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining the Latin phrase as "not master of one's mind"). The burden of proving that the statutes of limitations should have been equitably tolled rests with Haynes. *See Smith-Haynie*, 155 F.3d at 579. He has failed to carry it.

We begin by clarifying the law that governs whether Haynes was non compos mentis at the time his right to file suit accrued. The parties suggested that D.C. law regarding this species of equitable tolling applies to both Haynes's ADA and DCHRA claims. The district court followed their lead and applied D.C. law in declining to toll the statutes of limitations. *See Haynes*, 271 F. Supp. 3d at 152. This approach was wrong in part, because it is a question of federal law whether the statute of limitations on Haynes's ADA claim has run. *See Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278-79 (1st Cir. 1999); *see also Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988) (holding that whether Title VII's statute of limitations, which the ADA incorporates, should be equitably tolled is a question of federal law). Nevertheless, we can affirm "on any basis supported by the record," *United States v. Hicks*, 911 F.3d 623, 626 (D.C. Cir. 2018) (citation omitted), and do so here.

Indeed, as a practical matter, the distinction between federal and state law makes no difference in this case: The relevant D.C. law relied on by the parties and the district court merely restates a "universally applied standard" that is also employed by the federal courts "for determining when a person is mentally unsound for purposes of tolling [a] civil statute of limitations." *Speiser v. U.S. Dep't of Health & Human Servs.*, 670 F. Supp. 380, 384 (D.D.C. 1986) (collecting cases), *aff'd*, 818 F.2d 95 (D.C. Cir. 1987); *see also Smith-Haynie*, 155 F.3d

at 579-80 & n.5 ("[u]sing District of Columbia law as a touchstone" to determine whether a Title VII plaintiff was non compos mentis and observing that the applicability of federal law "does not, of course, preclude the use of District of Columbia law to distill basic common law principles"). Under that unified standard, non compos mentis "means generally one who is not capable of handling his own personal affairs or who cannot function in society." *Oparaugo v. Watts*, 884 A.2d 63, 73 (D.C. 2005) (citing *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 665 (D.C. 1997)). "The disability of a person claiming to be non compos mentis must be of such a nature as to show [she] is unable to manage [her] business affairs or estate, or to comprehend [her] legal rights or liabilities." *Smith-Haynie*, 155 F.3d at 580 (internal quotation marks omitted).

Haynes argues that his "functional[] illitera[cy]" rendered him non compos mentis, Reply Br. 18-20, because his "learning disability and dyslexia impeded his ability to understand his legal obligations and exercise his legal rights," Haynes Br. 19. As evidence, he points to (1) language in his original, pro se complaint that suggests that he misunderstood the Notice of Right to Sue as setting a future hearing date rather than informing him of his right to file a lawsuit within 90 days; (2) several errors in his initial EEOC questionnaire, including his inconsistent indication of whether he had a disability and a statement that he had been discriminated against on the basis of genetic information; and (3) reports issued by the psychologist he saw in May 2015. Haynes Br. 19-21. This evidence is insufficient to create a dispute of material fact as to whether Haynes was non compos mentis at any time, much less for the length of time necessary to bring his claims within the relevant statutes of limitations.

Our decision in *Smith-Haynie v. District of Columbia* is particularly instructive. In that case, the plaintiff filed suit

under Title VII ninety-two days after she received her Notice of Right to Sue but claimed that the statute of limitations should have been tolled because she had been unable "to grasp the meaning of the 90-day limitations period" due to emotional trauma. *Smith-Haynie*, 155 F.3d at 579. We rejected that argument, observing that the "hurdle is high" for a plaintiff asserting equitable tolling because the court's equitable power "will be exercised only in extraordinary and carefully circumscribed instances." *Id.* at 579-80 (internal quotation marks omitted). Most importantly, we drew a distinction between the inability to carry out life's ordinary tasks and "[i]mpaired judgment" or the assertion that a plaintiff "did not understand" her legal rights, concluding that a person who is non compos mentis must be able to present evidence that she was "incapable of handling her own affairs or unable to function [in] society." *Id.* at 580 (internal quotation marks omitted).

We went on to suggest that to successfully invoke this doctrine, a plaintiff must proffer evidence that she was "[un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel," *id.* (quoting *Nunnally v. MacCausland*, 996 F.2d 1, 5 (1st Cir. 1993)), or evidence "to support an inference that [the plaintiff] was '*in fact* prevent[ed] . . . from managing [her] affairs,'" *id.* (quoting *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)). We contrasted this sort of information with the evidence presented by the plaintiff in *Smith-Haynie*, who had not "shown that she was ever adjudged incompetent, signed a power of attorney, had a guardian or caretaker appointed or otherwise . . . let someone else handle her affairs." *Id.* (quoting *Speiser*, 670 F. Supp. at 385). Finally, we observed that when a plaintiff belatedly files suit, the argument for equitable tolling is strengthened when she can explain what precipitated the

eventual exercise of her legal rights or spurred her to retain counsel. *Id.*

Haynes's learning disability resembles the plaintiff's condition in *Smith-Haynie* in that it may have interfered with his ability to understand the statute of limitations and exercise his legal rights. Critically, however, Haynes's medical records demonstrate that he retained the ability to "handl[e] h[is] own affairs and function[] in society." *See id.* His "[t]hought content was devoid of delusion . . . or any symptoms of psychosis." J.A. 155. Haynes "did not exhibit significant attention and concentration problems," and "was adequately oriented to time, place and person." *Id.* He was able to interact with the psychologist normally, follow directions, and "answered all the questions presented to him." *Id.* After speaking with Haynes, the psychologist concluded that his "thought process was coherent, logical and goal directed," noting that "[h]e was able to reach his goal of thoughts without significant digression." J.A. 154-55. Indeed, as the district court noted, "[m]issing from" Haynes's filings are "any references to materials in the record of this case tending to show that [he] could not manage his own affairs or otherwise function in society because of a reading disorder." *Haynes*, 271 F. Supp. 3d at 154.

Nor has Haynes explained why he was able to ascertain and exercise his legal rights by bringing suit in federal court when he eventually did, but was unable to do so during the ninety-day period following receipt of the Notice of Right to Sue or the year following his termination. Instead, the evidence shows that Haynes was able to contact the EEOC, receive counseling about his legal rights, file a charge of discrimination, file a federal lawsuit, and eventually retain counsel. This series of actions—absent further explanation— weighs against his having been non compos mentis.

We do not mean to diminish the severity of Haynes's learning disability or the effect that it may have had on his ability to understand the written information given to him by the EEOC. But our precedent makes clear that lack of understanding is not enough—a plaintiff claiming he was non compos mentis must demonstrate an inability to handle his everyday affairs or function in society. Haynes has offered no evidence that his capacities were so limited and presented medical reports to the contrary. We must, accordingly, conclude that he has failed to meet the demanding standard our case law sets for equitable tolling and that his ADA and DCHRA claims are untimely.

C

Haynes also brings claims under the ADEA and Title VII, arguing that D.C. Water discriminated against him due to his age and race. Because Haynes did not allege race or age discrimination when he filed a charge of discrimination with the EEOC, he failed to exhaust his administrative remedies as to these claims. We will therefore affirm the district court's grant of summary judgment to D.C. Water.

Prior to filing a suit alleging violations of the ADEA and Title VII, a plaintiff must exhaust her administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Kennedy v. Whitehurst*, 690 F.2d 951, 961 (D.C. Cir. 1982). That means "fil[ing] an administrative charge with the EEOC and allow[ing] the agency time to act on the charge" before commencing litigation. *Park*, 71 F.3d at 907; 42 U.S.C. § 2000e-5(b); 29 U.S.C. § 626(d). Generally, a plaintiff may only bring claims in district court that were actually part of the administrative charge. *Park*, 71 F.3d at 907. But in *Park v. Howard University*, we held that a plaintiff may also bring claims that are "like or reasonably related to the allegations of

the charge and growing out of such allegations." 71 F.3d at 907 (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).[1] "[F]or a charge to be regarded as 'reasonably related' to a filed charge . . . it must at a minimum . . . arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (internal quotation marks and alteration omitted). "This connection is necessary to give the agency 'an opportunity to resolve [the] claim administratively before [the employee] file[s] her complaint in district court.'" *Id.* (quoting *Wiley v. Glassman*, 511 F.3d 151, 160 (D.C. Cir. 2007)).

The charge of discrimination form Haynes filed with the EEOC asks complainants to check a box underneath the heading "Discrimination Based on" to indicate the basis of

---

[1] In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court rejected the "continuing violation" doctrine, which had allowed Title VII plaintiffs to bring otherwise untimely claims on the theory that more recent discrimination or retaliation was part of the same unlawful employment practice. 536 U.S. 101, 110-14 (2002). Some lower courts read *Morgan* as "teaching that each discrete incident" of discriminatory or retaliatory conduct "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003). On that understanding, *Morgan* would likely preclude the approach we took in *Park*. Other courts read *Morgan* as addressing timeliness rather than exhaustion. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 303 (4th Cir. 2009) ("*Morgan* addresses only the issue of when the limitations clock for filing an EEOC charge begins ticking with regard to discrete unlawful employment practices," rather than addressing "exhaustion requirements for claims of related, post-charge events."). We need not decide whether our "like or reasonably related" doctrine survives *Morgan*, because Haynes cannot even meet the standard set forth in *Park*. *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010).

their charge. Haynes checked "disability," leaving the boxes for "race," "color," and "age" blank. J.A. 143. His narrative describing the alleged discrimination also lacked any mention of age or race. Instead, he wrote that "I have a disability and require reasonable accommodations," that "My Employer has not provided me with reasonable accommodations," and that

> I believe that my layoff (and possible subsequent termination as a result of being unable to obtain these licenses) was discriminatory in violation of the Americans with Disabilities Act of 1990, as amended, ("ADA") and that my Employer has failed to provide[] me with a reasonable accommodation in violation of the ADA.

*Id.* Haynes's EEOC intake questionnaire similarly references disability discrimination. He checked the box stating "Yes, I have a disability," wrote that he was discriminated against because of a "[l]earning disability," and stated that he asked verbally for "changes or assistance to do [his] job because of [his] disability." J.A. 167. As a result, the district court held that Haynes failed to exhaust his age and race discrimination claims because it was "simply . . . not reasonable to conclude that an investigation of the allegations in plaintiff's EEOC charge, particularly in light of its repeated mention of 'disability' and 'reasonable accommodation,' would uncover a claim of discrimination based on race or age." *Haynes*, 271 F. Supp. 3d at 155.

Haynes argues on appeal that his "emphasis" in the administrative proceeding "on his disability claim should not preclude other discrimination claims that would arise from the investigation," given that all his claims arise from the same series of events. Haynes Br. 23. Haynes has not, however, explained why information regarding race or age discrimination would arise from an investigation into the

accommodation of his disability. Indeed, he does not address race discrimination at all, forfeiting the argument. *See* Haynes Br. 21-23; *see also Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("Mentioning an argument 'in the most skeletal way, leaving the court to do counsel's work, . . . and put flesh on its bones' is tantamount to failing to raise it." (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005))).

With respect to age discrimination, Haynes argues only that the fact that he twice wrote the word "Age" in his EEOC questionnaire after the names of the other two Repairers who did not timely complete their exams means that the EEOC would have examined his allegations of age discrimination when conducting its investigation. Haynes Br. 23; J.A. 166.

We reject this argument for two reasons. First, these references to age are in the questionnaire Haynes submitted to the EEOC, rather than his actual charge of discrimination. *Compare* J.A. 166, *with* J.A. 143. Such a questionnaire can be treated as part of the "charge," exhausting the claims described in it. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402-04 (2008) (holding that the EEOC "acted within its authority in formulating the rule that a filing is deemed a charge if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf"); J.A. 168 ("Consistent with 29 C.F.R. 1601.12(b) and 29 C.F.R. 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge."). But Haynes has offered no reason why we should treat *his* questionnaire that way. To the contrary—Haynes expressly indicated on the questionnaire that he did not wish for it to be treated as a charge. Rather than check the box on the form that states "I want to file a charge of discrimination," Haynes marked a separate box that says "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, *I have not*

*filed a charge with the EEOC*." J.A. 168 (emphasis added); *see also Park*, 71 F.3d at 908-09 (holding that the contents of a similar, unsworn intake questionnaire did not form part of the administrative charge for exhaustion purposes). Some questionnaires may be properly understood as charges; this one may not be.

But even if we were to assume that the intake questionnaire formed part of the charge, we would reject Haynes's argument that he exhausted his age discrimination claim for a second reason. The section of the questionnaire where he twice wrote "Age" directs the filer to list the "race, sex, age, national origin, religion, or disability of" similarly situated employees who were "treated better than you," "if known, and if it relates to your claim of discrimination." J.A. 166. Following the names of the two Repairers who were also laid off, Haynes wrote the word "Age" twice. According to him, "[t]he only reason . . . [he] would list the age of 'similarly-situated' employees is to allege age discrimination." Haynes Br. 23. Haynes, however, did not actually list the ages of the other employees. He wrote the *word* age. Moreover, he then crossed out that entire section of his questionnaire, wrote "Nobody," and rewrote the names of the two employees in the section of the questionnaire asking for similarly situated employees who were "treated the *same* as you"—which, of course, is the proper place to describe the employees who Haynes alleges were also laid off for failing to timely complete the test. J.A. 167. When he did so, he did not again write "Age" in the column for information relevant to his claim of discrimination. *Id.* We cannot agree that the EEOC would have uncovered evidence relevant to Haynes's age discrimination claims on the basis of two crossed-off references to "Age" in a questionnaire and charge that otherwise repeatedly and exclusively described disability discrimination.

Because Haynes's EEOC charge "contained no claims or factual allegations that could reasonably be expected upon investigation to lead to" evidence supporting claims of race or age discrimination, he failed to exhaust his ADEA and Title VII claims. *Park*, 71 F.3d at 909. We therefore affirm the district court's grant of summary judgment to D.C. Water on these counts.

## D

Finally, Haynes argues that the district court erred when it denied his Rule 56(d) request for discovery and granted D.C. Water summary judgment on his Section 1981 claim. Because the declaration Haynes filed failed to meet the standards set by *Convertino v. U.S. Department of Justice*, 684 F.3d 93 (D.C. Cir. 2012), we affirm the district court.[2]

---

[2] The parties dispute whether Haynes properly raised an objection to the district court's grant of summary judgment other than that discovery should have been permitted. Haynes claims in his opening brief that the district court improperly disregarded his evidence that D.C. Water's proffered reason for discharging him was pretextual. Haynes Br. 10-11. We read that statement to challenge the appropriateness of summary judgment, albeit on the narrow ground that the district court wrongly failed to credit Haynes's assertion that "Utility Workers, consisting of primarily Caucasian employees, received additional time and training to obtain their Journeyman's license." *Id.* That argument is without merit. D.C. Water presented evidence that utility workers were not electricians subject to the licensure requirements that Haynes alleges were discriminatorily administered. *Haynes*, 271 F. Supp. 3d at 158-59. Rather than file a declaration or other materials disputing that evidence, Haynes offered only argument. That cannot create a triable issue of fact. *See* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits

"Section 1981 protects the right 'to make and enforce contracts' free from racial discrimination." *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017) (quoting 42 U.S.C. § 1981(a)). Although the framework for evaluating Section 1981 claims resembles that for Title VII claims, discrimination under Section 1981 must be intentional, *DeJesus v. WP Co. LLC*, 841 F.3d 527, 532 (D.C. Cir. 2016), and there are no administrative remedies to exhaust, *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 461 (1975).

Haynes alleges that D.C. Water violated Section 1981 when it "changed his official position to require an unnecessary license, gave him six months to obtain the Journeyman Electrician License while giving Caucasian electricians eighteen months to two years to obtain" the same licenses, "denied Mr. Haynes the chance to go back to school while offering Caucasian employees the opportunity to take classes and obtain the education necessary to earn their Journeyman Electrician Licenses, removed him from his position, and terminated him from his employment." J.A. 11-12.

D.C. Water moved for summary judgment less than a month after Haynes filed the amended complaint in which he first made a Section 1981 claim, stating that it had discharged Haynes only because he failed to obtain the license needed to do his job. In response to Haynes's allegations that he had been

---

or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ."); *see also Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002) ("[I]n opposing a motion for summary judgment that is supported as provided in the Rule, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" (quoting *Liberty Lobby*, 477 U.S. at 248)).

treated differently, D.C. Water presented evidence that all employees required to obtain journeyman electrician licenses had been subject to the same requirements and deadlines. In addition to opposing the motion on the merits, Haynes filed a declaration from his lawyer pursuant to Rule 56(d) requesting that summary judgment be delayed pending discovery. The rule provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d). Haynes argues that the district court abused its discretion when it denied him a chance to take discovery regarding, in relevant part:

1. All electronic messages from Defendant's managers relating to the reorganization and impact on employees based on race, age, and education and competence to pass examination for a license.
2. All documents and electronic messages regarding the elimination of the Electrician Repair 9 and 11 position.
3. All documents regarding the treatment of Plaintiff's similarly-situated colleagues (electricians).
4. All documents relating to the time other Defendant employees received to obtain a Journeyman Electrician License and any back to school offers to other employees.
5. All documents related to the race, age and disability of Defendant employees who were offered additional time to obtain a Journeyman's license or an opportunity to go back to school.
6. All documents and electronic communications reflecting contacts with Occupational and

Professional Licensing Division regarding electrician's duties.

J.A. 140-41.

At first blush, Haynes has a point. Summary judgment usually "is premature unless all parties have 'had a full opportunity to conduct discovery,'" *Convertino*, 684 F.3d at 99 (quoting *Liberty Lobby*, 477 U.S. at 257), and here, no discovery had taken place. We held in *Convertino*, however, that regardless of the time at which a motion for summary judgment is filed, an affidavit or declaration submitted under Rule 56(d) must: (1) "outline the particular facts [the nonmovant] intends to discover and describe why those facts are necessary to the litigation;" (2) "explain why [the nonmovant] could not produce [the facts] in opposition to the motion [for summary judgment];" and (3) "show the information is in fact discoverable." *Id.* at 99-100 (internal quotation marks omitted). This inquiry must be resolved through "application of the *Convertino* criteria to the specific facts and circumstances presented in the request," rather than on the basis of presumptions about a given stage of litigation. *U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 27 (D.C. Cir. 2014).

This case turns on the first of the *Convertino* factors.[3] The district court held that Haynes's two-page declaration failed to

---

[3] The district court also concluded that Haynes had failed to explain why he could not produce some of the materials requested, thus failing to meet the second *Convertino* factor. And on appeal, D.C. Water argues that the declaration was deficient with respect to all three factors. Because each factor must be fulfilled for a nonmovant to secure discovery, our conclusion that the declaration failed to explain adequately why the facts sought were necessary to

adequately explain why the facts outlined above were necessary to the litigation. We agree. Although the declaration listed categories of "information and documentation" that Haynes "needed to respond to the issues raised in [D.C. Water's] Motion for Summary Judgment," J.A. 140-41, it said nothing about "*why* those facts [were] necessary" to respond to the motion or to support the allegations in the complaint, *Convertino*, 684 F.3d at 99 (emphasis added). Even looking beyond Haynes's declaration to his briefing, his explanation remains deficient in light of the evidence already in the record, his theory of the case, and the discovery actually requested. *See Smith v. United States*, 843 F.3d 509, 513 (D.C. Cir. 2016) (analyzing nonmovant's opposition under first *Convertino* factor); *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045-46 (D.C. Cir. 2008) (considering whether the necessity of the requested evidence was "self-evident" and otherwise looking beyond the declaration).

D.C. Water's proffered justification for Haynes's discharge was compliance with a D.C. law requiring that electricians possess journeyman licenses prior to working with the level of supervision Haynes had. Haynes contends that reason was pretext because other employees subjected to new licensure requirements during the reorganization were given further accommodations. As relevant here, in Haynes's complaint he describes those other employees as electricians who received additional flexibility in obtaining their journeyman electrician licenses. D.C. Water then presented evidence that the only electricians subject to new licensure requirements during the reorganization were Electrical Equipment Repairers like Haynes, and that all the Repairers

---

the litigation resolves the case without the need to reach the other factors.

were treated the same (or worse) than Haynes. J.A. 21-22, 46, 62-63.

After D.C. Water produced this evidence about the other electricians affected by the reorganization, Haynes broadened the group of employees he alleged were subjected to relaxed licensing requirements. He argued that discovery regarding non-electricians was necessary to determine whether similarly situated employees existed who were given additional time to obtain non-electrical licenses. He also suggested that discovery about the reorganization more generally was necessary to determine whether it disproportionately impacted African-American employees who had long worked in limited-skill positions at D.C. Water.

Discovery along these lines might have supported Haynes's claim of discrimination and a request for such discovery could have rendered summary judgment premature. Almost all the information Haynes identified in his request for discovery, however, is expressly restricted to information about *electricians* affected by the reorganization. And Haynes failed to explain adequately why the more general category of information he identified in his declaration was necessary to create a triable issue of fact. As the district court concluded, his explanations fall short of the level of particularity we have previously concluded is necessary to meet the first *Convertino* factor. *See* Kohn Aff., *Convertino v. U.S. Dep't of Justice*, No. 1:04-cv-00236 (D.D.C. Oct. 18, 2010), Dkt. No. 187-1 (describing the particular aspects of the motion that discovery was necessary to rebut, the specific discovery that would be sought, and how that information would create a genuine dispute of material fact with respect to six facts underlying the movant's arguments); *see also Smith*, 843 F.3d at 513 (holding that the first *Convertino* factor requires explaining "how" the requested facts "could create a material factual dispute"). He

did not, for example, explain how the treatment of non-electricians could call into question D.C. Water's proffered reason for his discharge, which was specific to D.C. law on the licensing of electricians. He also failed to identify with even a modest level of specificity those categories of non-electricians that might have been subject to more relaxed licensing requirements.

Haynes's response is twofold. First, he argues that we have, in the past, held that it was an abuse of discretion to deny discovery following the production of similarly vague declarations or affidavits. Haynes Br. 16-18. But the cases he relies on for this proposition were decided before *Convertino* established the applicable standard. The declarations at issue in those cases, moreover, still described with greater specificity how the requested information might create a dispute of material fact. Kohn Aff., *Ikossi v. Dep't of Navy*, No. 1:04-cv-01392 (D.D.C. Feb. 4, 2005), Dkt. No. 10-2; Shapiro Aff., *Chappell-Johnson v. Powell*, No. 1:03-cv-01557 (D.D.C. Dec. 1, 2003), Dkt No. 14-2.

Second, Haynes says that the district court necessarily abused its discretion by requiring him to produce evidence that D.C. Water's explanation for his discharge was mere pretext. Haynes Br. 14-15. He argues that the relevant inquiry prior to discovery is whether he stated a claim, not whether he created a dispute of material fact regarding pretext. This claim of legal error conflates two separate conclusions of the district court. First, the district court concluded that Haynes's Rule 56(d) request was deficient and denied discovery. Then it concluded that on the present record Haynes had failed to create a dispute of material fact as to whether D.C. Water's proffered reason for discharging him was pretext. Having decided that Haynes was not entitled to discovery, faulting him for failing to create a dispute of material fact was entirely proper—and indeed

required to grant summary judgment. That Haynes's complaint may have survived a motion to dismiss because he stated a claim is, given the motion for summary judgment and proffer of a legitimate, nondiscriminatory reason, irrelevant.

\* \* \*

Our decision in *Convertino* provides a roadmap for securing discovery. When it comes to the first factor, that guide directs nonmovants to file an affidavit or declaration explaining, with sufficient particularity, what specific facts are required to oppose the motion and why those facts are necessary to the litigation. What counts as "sufficient particularity" will necessarily be a case-specific inquiry, dependent on the nature of the claims and the existing record. But the affidavits we have approved of in prior cases have two things in common. First, they discuss the specific facts that must be discovered to support a plaintiff's legal theory, rather than recite broad categories of information—even if broad categories of information will ultimately be requested to uncover those specific facts. Second, they explain why the required information *could* create a dispute of material fact, even when its ultimate import is unclear, and connect the information sought to the theory of relief advanced. Haynes's declaration was deficient on both counts.

Though in some cases the relevance and necessity of the requested discovery are so obvious given the claims that little more than identification of the information is required to head off a pre-discovery motion for summary judgment, *see Ikossi*, 516 F.3d at 1045-46, given the complexities of Haynes's Section 1981 theory of liability, this is not such a case. Accordingly, we conclude that the district court did not abuse its discretion in denying Haynes's Rule 56(d) request for discovery.

III

Haynes's ADA and DCHRA claims are untimely, his ADEA and Title VII claims were not properly exhausted before the EEOC, the district court did not abuse its discretion in denying Haynes's request for discovery, and summary judgment on his Section 1981 claim was appropriate. We therefore affirm the district court.

*So ordered.*