# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 2, 2021       Decided August 16, 2022

No. 20-5356

UNITED STATES OF AMERICA,
APPELLEE

v.

ALL ASSETS HELD AT CREDIT SUISSE (GUERNSEY) LIMITED,
ACCOUNT NUMBERS 41610 AND 41950, IN THE NAME OF
SAMANTE LIMITED AS TRUSTEES OF THE BALFORD TRUST,
LAST VALUED AT APPROXIMATELY $147.9 MILLION IN UNITED
STATES DOLLARS, ET AL.,
APPELLEES

PAVEL LAZARENKO,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-00798)

———

*William H. Stassen* argued the cause for appellant. With
him on the briefs were *Ian M. Comisky*, *Jed M. Silversmith*, and
*David B. Smith*. *Barry W. Levine* entered an appearance.

*Emily Beckman* was on the briefs for movant-intervenors in support of appellant.

*Andrew C. Noll*, Attorney, U.S. Department of Justice, argued the cause for appellee United States. With him on the brief was *Daniel H. Claman*, Attorney. *Scott A. Meisler*, Attorney, entered an appearance.

Before: TATEL,[*] KATSAS, and JACKSON,[†] *Circuit Judges.*

Opinion for the Court filed *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: The government seeks the forfeiture of a trust established by Pavel Lazarenko, a former Prime Minister of Ukraine, located abroad on the island of Guernsey. Since 2004, a Guernsey court order has prohibited Lazarenko from accessing the trust, and a federal district court order has prohibited him from challenging the Guernsey order abroad. Lazarenko contends that the district court lacked statutory authority to issue the latter order and that, in any event, the order violated principles of international comity. We reject both challenges on procedural grounds.

I

A

Civil forfeiture actions allow the government to take property associated with criminal activity. Such actions are *in rem*: The property itself is named as the defendant and is, "by resort to a legal fiction, held guilty and condemned as though

---

[*] Circuit Judge Tatel assumed senior status after this case was argued and before the date of this opinion.

[†] Circuit Judge, now Justice, Jackson was a member of the panel at the time the case was argued but did not participate in the opinion.

it were conscious." *Various Items of Personal Prop. v. United States*, 282 U.S. 577, 581 (1931). "Traditionally, the property had to be present within the court's territorial jurisdiction." *United States v. All Funds in Acct. Nos. 747.034/278, 747.009/278, & 747.714/278 Banco Espanol de Credito*, 295 F.3d 23, 25 (D.C. Cir. 2002) (*Banco Espanol*). Without possession of the property, a court would have "no power to enforce its decree." *The Brig Ann*, 13 U.S. (9 Cranch) 289, 291 (1815).

Congress altered this traditional rule in 1992. Now, if property located in a foreign country is subject to forfeiture under United States law, the federal government may bring a forfeiture action in our district court. 28 U.S.C. § 1355(b)(2). The district court thus may acquire *in rem* jurisdiction even if a forfeiture order would have no practical effect without cooperation by the foreign jurisdiction where the property is located. *See Banco Espanol*, 295 F.3d at 26–27.

In any civil forfeiture action, the government may seek interim relief to ensure that the property at issue remains available while the case is pending. Section 983(j)(1) of title 18 provides that in such an action, the district court "may enter a restraining order or injunction, require the execution of satisfactory performance bonds, create receiverships, appoint conservators, custodians, appraisers, accountants, or trustees, or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture."

Civil forfeiture proceedings are governed by the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions (Supplemental Rules). Under these rules, a person asserting an interest in the property may file a claim in the forfeiture action, Supp. R. G(5)(a)(i), and the government may move to strike on the ground that the claimant

lacks standing, *id.* G(8)(c)(i)(B). The Federal Rules of Civil Procedure do not apply to the extent that they are inconsistent with the Supplemental Rules. *Id.* A(2).

B

Pavel Lazarenko served in the Ukrainian government from 1992 to 1998, including as Prime Minister from 1996 to 1997. The government alleges that Lazarenko exploited his positions of authority to amass a $300 million fortune through fraud, extortion, bribery, misappropriation, and embezzlement. The government further alleges that Lazarenko laundered his illicitly obtained funds through United States financial institutions, in violation of U.S. law.

In 1997, Lazarenko established the irrevocable Balford Trust under the laws of Guernsey, a self-governing Crown Dependency of the United Kingdom. The trust beneficiaries are members of Lazarenko's family, including his daughters Ekaterina and Lecia. The government alleges that, by 1998, Lazarenko had transferred $121 million of ill-gotten funds to the trust. As of November 2017, the trust was worth over $176 million.

In 2001, a grand jury in the Northern District of California charged Lazarenko with 53 counts of money laundering, conspiracy, wire fraud, and transportation of stolen property. A jury convicted him on 14 counts, but the Ninth Circuit reversed as to six, leaving in place seven convictions for money laundering and one for conspiracy. *United States v. Lazarenko*, 564 F.3d 1026, 1047 (9th Cir. 2009).

In 2004, the government brought this civil action seeking the forfeiture of over $230 million held in overseas bank accounts, including the Balford Trust. The government invoked 18 U.S.C. § 981, which provides for the forfeiture of

property traceable to federal money-laundering offenses. To preserve the defendant assets, the government sought a restraining order under section 983(j)(1). In May 2004, the district court found probable cause to believe that the assets were forfeitable, and it issued an order prohibiting Lazarenko and others "from attempting or completing any action that would affect the availability or value" of the Balford Trust and other defendant assets. Restraining Order, ECF Doc. 3, at 4–5. The United States then sought assistance from the Guernsey government, which applied to the Royal Court of Guernsey for an order restraining the Balford Trust and other defendant assets located in Guernsey. The Royal Court granted the application in July 2004, but its order provided that "any person affected by this Order may apply … for the discharge or variation of this Order." App. to Mot. to Clarify Restraining Order, ECF Doc. 538-3, at 105.

Between 2004 and 2008, Lazarenko, his daughters, and others filed claims to the defendant property. Litigation dragged on for years. The government filed several motions to strike, and many discovery disputes arose.

In November 2015, Lazarenko asked the Guernsey court to lift its restraining order on the ground that the disputed assets were not forfeitable under Guernsey law. The government threatened Lazarenko with a contempt motion for violating the district court's restraining order. In response, Lazarenko asked the district court to clarify that its order did not bar him from challenging the Guernsey restraining order in Guernsey. The district court rejected the request, ruling that Lazarenko's filing in Guernsey violated "the plain language" of its order. *United States v. All Assets Held at Bank Julius, Baer & Co., Guernsey Branch, Acct. No. 121128*, 244 F. Supp. 3d 188, 191 (D.D.C. 2017). Lazarenko stopped pursuing his Guernsey application.

In 2020, the district court struck Lazarenko's claim to the Balford Trust for lack of standing. *United States v. All Assets Held at Bank Julius, Baer & Co., Guernsey Branch, Acct. No. 121128*, 480 F. Supp. 3d 1 (D.D.C. 2020). It reasoned that Lazarenko, as settlor of the irrevocable trust, had no concrete interest in the disposition of its assets. *Id.* at 16. In response to that ruling, Lazarenko moved to modify the district court's restraining order to allow him to litigate the forfeitability of the Balford Trust under Guernsey law in Guernsey. Lazarenko argued that the district court no longer had authority to restrain him because he was no longer a party with respect to the trust and that the order violated principles of international comity.

The district court denied the motion. The court held that its decision to strike Lazarenko's claim did not vitiate its power to enforce the restraining order. *United States v. All Assets Held at Bank Julius, Baer & Co., Guernsey Branch, Acct. No. 121128*, 502 F. Supp. 3d 91, 102 (D.D.C. 2020). The purpose of the restraining order, the court explained, was "to preserve the availability of property subject to forfeiture during the pendency of the forfeiture proceedings." *Id.* (cleaned up). The court concluded that restraining Lazarenko still served that purpose because the Balford Trust would become unavailable to other claimants if he were to gain access to it through successful litigation in Guernsey. *Id.* Allowing Lazarenko to litigate abroad would thus prejudice the rights of other claimants. *Id.*

Lazarenko seeks review of the denial of his motion to modify the restraining order. Because that order has remained in effect for more than 14 days, it counts as an injunction immediately appealable under 28 U.S.C. § 1292(a)(1). *In re Any & All Funds or Other Assets in Brown Bros. Harriman & Co. Acct. No. 8870792*, 613 F.3d 1122, 1125 (D.C. Cir. 2010).

The district court's order refusing to modify the injunction was therefore itself immediately appealable.

C

Shortly after the district court struck Lazarenko's claim to the Balford Trust, the government moved to strike the daughters' claim as well. The daughters opposed the motion and filed a conditional cross-motion asking the district court to modify the restraining order to allow them to litigate in Guernsey should it strike their claim. The cross-motion raised the same arguments as Lazarenko's motion to modify, which the daughters incorporated by reference.

The district court granted the government's motion to strike, and it denied the daughters' cross-motion for the reasons set forth in its opinion denying their father's motion to modify. *United States v. All Assets Held at Bank Julius Baer & Co., Guernsey Branch, Acct. No. 121128*, No. 04-cv-0798 (PLF), 2021 WL 4060353, at *16 (D.D.C. Sept. 7, 2021). The daughters' appeal of this ruling is being held in abeyance pending the resolution of their father's appeal. *See* Order, *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd., Acct Nos. 41610 & 41950*, No. 21-5226 (D.C. Cir. Jan. 20, 2022). The daughters have moved to intervene as a matter of right in their father's appeal.

II

We begin with the daughters' motion to intervene. Federal Rule of Civil Procedure 24(a)(2) provides that a nonparty may intervene in district court, as a matter of right, if she files a timely motion and claims an interest relating to the property at issue that may be practically impaired in the case, "unless existing parties adequately represent that interest." Because the Federal Rules of Appellate Procedure are silent on the

subject, we apply the intervention standards of Civil Rule 24. *See Harrington v. Sessions (In re Brewer)*, 863 F.3d 861, 871–73 (D.C. Cir. 2017).

The daughters claim an interest in being able to litigate in Guernsey themselves, which might be impaired by a decision in favor of the government in this appeal. But Lazarenko himself adequately represents that interest. A would-be intervenor is adequately represented when she "offer[s] no argument not also pressed by" an existing party. *Bldg. & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994). Here, the daughters seek to raise precisely the same arguments as their father. Moreover, the daughters have revealed by their conduct that they find his representation adequate. In their cross-motion below, they adopted his arguments wholesale. And in this appeal, they declined our invitation to appear at oral argument. We therefore deny the daughters' motion to intervene.[1]

### III

On the merits, we review a district court's refusal to modify an injunction for abuse of discretion. *See Manitoba v. Zinke*, 849 F.3d 1111, 1117–18 (D.C. Cir. 2017). A district court abuses its discretion "when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

Lazarenko raises three arguments that the district court abused its discretion. *First*, the court can no longer enjoin him because he is no longer party to the dispute over the Balford Trust. *Second*, the court had no statutory authority to enjoin

---

[1] Because we deny the daughters' motion to intervene, we deny as moot their motion to supplement the record on appeal.

him from litigating in the courts of other sovereigns. *Third*, the injunction here violates principles of international comity.

A

Lazarenko contends that the district court lost the authority to restrain his conduct regarding the Balford Trust when it held that he lacks standing to contest its forfeitability. This argument fails for two reasons.

First, Lazarenko remains a party in this case, including with respect to the Balford Trust. Unless a district court expressly directs entry of a final judgment, any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties." Fed. R. Civ. P. 54(b). Here, the order striking Lazarenko's claim to the Balford Trust neither entered a final judgment nor adjudicated all claims of all parties. To the contrary, Lazarenko still has pending claims to other defendant assets, as do the government and other claimants.

Second, the court would be able to restrain Lazarenko regardless of his party status. Section 983(j)(1) permitted the court to "enter a restraining order or injunction … or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture." This provision is not limited to parties. Like 18 U.S.C. § 1963(d)(1), which permits district courts to "enter a restraining order or injunction … or take any other action to preserve the availability of property" subject to certain criminal forfeitures, section 983(j)(1) permits restraining orders against nonparties. *See United States v. Regan*, 858 F.2d 115, 119 (2d Cir. 1988).

Lazarenko counters that Federal Rule of Civil Procedure 65(d)(2) limits injunctions against nonparties. But the Civil Rules do not apply to *in rem* actions "to the extent that they are

inconsistent with the[] Supplemental Rules."  Supp. R. A(2); *see also id.* G(1) (the Civil Rules apply to *in rem* forfeiture actions only "[t]o the extent that this rule does not address an issue").  Like section 983(j)(1), the Supplemental Rules permit a court to "enter any order necessary to preserve the property" or "to prevent its removal or encumbrance" whenever "the government does not have actual possession" of it.  Supp. R. G(7)(a).

Lazarenko also relies on *United States v. Kirschenbaum*, 156 F.3d 784 (7th Cir. 1998).  *Kirschenbaum* dealt with 21 U.S.C. § 853(e)(1), a criminal analogue to section 983(j)(1), which empowers district courts to "enter a restraining order or injunction … or take any other action to preserve the availability of property."  The Seventh Circuit held that this language permits orders only against nonparties over whom the district court has personal jurisdiction.  *See* 156 F.3d at 795.  Here, though, Lazarenko makes no argument that the district court lacked personal jurisdiction over him.

B

Lazarenko next argues that section 983(j)(1) does not empower the district courts to issue anti-suit injunctions.  He reasons that its general language, which authorizes restraining orders or similar actions to preserve the availability of property, does not specifically address anti-suit injunctions, and that we should require a clear statement for anti-suit injunctions given the comity concerns that they implicate.

This argument is forfeited, because Lazarenko did not raise it below in his motion to modify the restraining order.  *See Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019).  Lazarenko contends that he raised the argument in his 2015 motion to clarify the restraining order.  But that motion merely stated in a footnote, without further elaboration, that section

983(j)(1) "does not contemplate barring a claimant from filing lawsuits in foreign countries to challenge invalid process." ECF Doc. 538, at 4 n.3. And "cursory arguments made only in a footnote" are forfeited. *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc). Lazarenko also points to his reply brief in support of his motion to clarify, but an argument first presented in a reply brief is also forfeited. *Abdullah v. Obama*, 753 F.3d 193, 199 (D.C. Cir. 2014).

In his reply brief, Lazarenko also argues section 983(j)(1) does not authorize district courts to issue foreign anti-suit injunctions. On this point, he reasons that section 983(j)(1) contains no language to overcome the presumption against extraterritoriality. This argument is doubly forfeited: Lazarenko failed to raise it either below or in his opening brief. We therefore decline to consider it.

C

Finally, Lazarenko contends that even if section 983(j)(1) authorizes foreign anti-suit injunctions as a general matter, the restraining order in this case violates principles of international comity. In his view, the district court abused its discretion by granting such an injunction for no compelling reason.

Even when granted the power to issue foreign anti-suit injunctions, courts must exercise that power with due regard for international comity. The "mere filing" of a suit in one jurisdiction does not disable other sovereigns from exercising their own prescriptive jurisdiction. *Laker Airways Ltd. v. Sabena*, 731 F.2d 909, 927 (D.C. Cir. 1984). For actions *in personam*, parallel proceedings "should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." *Id.* at 926–27. And foreign anti-suit injunctions are appropriate only when "required to prevent an irreparable miscarriage of

justice," such as when "necessary to protect the jurisdiction of the enjoining court, or to prevent the litigant's evasion of the important public policies of the forum." *Id.* at 927. The "duplication of parties and issues alone is not sufficient." *Id.* at 928.

A different rule traditionally prevailed in *in rem* actions. In such cases, "the first court seized of jurisdiction over property, or asserting jurisdiction in a case requiring control over property, may exercise that jurisdiction to the exclusion of any other court." *SEC v. Banner Fund Int'l*, 211 F.3d 602, 611 (D.C. Cir. 2000). The justification for this rule is tied to the historic limits on *in rem* proceedings: A court exercising *in rem* jurisdiction "has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause." *Princess Lida v. Thompson*, 305 U.S. 456, 466 (1939). For this reason, "the jurisdiction of the one court must yield to that of the other." *Id.*

Lazarenko contends that the traditional rule governing *in rem* proceedings does not apply here. Because section 1355 eliminates the requirement that the court have control over the *res*, he argues that courts now have no special need to rely on anti-suit injunctions when asserting jurisdiction over property located abroad. Instead, he contends, the more stringent standard applicable to *in personam* suits should govern. And because prohibiting him from litigating in Guernsey was unnecessary for the district court to protect its jurisdiction, its refusal to modify the restraining order was improper.

Whatever the force of this argument, we think it is untimely. Where a litigant seeks to bring a second action in another jurisdiction long after the commencement of the first, "equitable principles" analogous to laches "make it more appropriate to enjoin the second action." *Laker Airways*, 731

F.2d at 929 n.63. In such cases, the litigant's lack of diligence in asserting its rights may bar an otherwise meritorious claim or defense if the delay prejudices other parties. *See Menominee Indian Tribe v. United States*, 614 F.3d 519, 531 (D.C. Cir. 2010). Both conditions are met here.

To begin, it took Lazarenko nearly 16 years to raise his current argument that the district court could not or should not restrain him from litigating in Guernsey. The district court and the Guernsey restraining orders were issued in 2004. Although the Guernsey order expressly permitted Lazarenko to seek a modification or discharge, he failed to do so until 2015. And even when the government then threatened to seek contempt in the district court, Lazarenko did not challenge the propriety of that court issuing a foreign anti-suit injunction. Instead, he argued only that the district court had not prevented him from litigating in Guernsey. After the district court ruled otherwise in March 2017, Lazarenko did not challenge the propriety of the anti-suit injunction until July 2020.

Lazarenko offers no justification for this extraordinary delay. He does not claim that he was unable to raise his objections to a foreign anti-suit injunction before 2020. To the contrary, he could have raised all his current arguments as early as 2004. His delay squarely reflects a lack of diligence.

As the district court recognized, overlooking Lazarenko's delay would prejudice other parties to the forfeiture action. When Lazarenko filed his motion to modify, the parties had already spent over a decade and a half litigating in the district court. By then, they had undertaken extensive discovery and briefed dozens of motions, the district court had written nearly 40 opinions, and the docket contained over 1300 filings. Opening a second front of litigation now, in the middle of ongoing proceedings here, would unfairly disrupt the parties'

settled understanding that the district court had become the principal forum for determining the forfeitability of the trust. On the other side of the balance, any prejudice to Lazarenko from keeping the injunction in place would be mitigated because, as the district court and the government both have acknowledged, Lazarenko may assert any defenses he may have under Guernsey law when and if the United States seeks to enforce a forfeiture judgment by the district court in the Guernsey courts.

Lazarenko could have pressed his current objections more than a decade and a half ago, and excusing his delay would risk wasting the considerable time and resources that the parties have invested in the district court proceedings. Under these circumstances, the district court reasonably denied his motion to modify the restraining order.

## IV

We deny Ekaterina and Lecia Lazarenko's motions to intervene and to enlarge the record on appeal. We affirm the denial of Pavel Lazarenko's motion to modify the restraining order.

*So ordered.*