# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 16, 2025    Decided June 9, 2026

No. 23-5237

FARAH NAZ,
APPELLANT

v.

CHRIS WRIGHT,
SECRETARY OF THE U.S. DEPARTMENT OF ENERGY,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-01730)

---

*Anthony F. Shelley*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With him on the briefs was *Cody F. Marden*, appointed by the court.

*Johnny H. Walker*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Matthew M. Graves*, U.S. Attorney, and *Brian P. Hudak* and *Jane M. Lyons*, Assistant U.S. Attorneys. *Fithawi Berhane*, Assistant U.S. Attorney, entered an appearance.

2

Before: SRINIVASAN, *Chief Judge*, KATSAS, *Circuit Judge*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* KATSAS.

SRINIVASAN, *Chief Judge*:  Farah Naz alleges that her former employer, the Department of Energy, unlawfully discriminated and retaliated against her in a series of actions culminating in her firing.  She brought a pro se lawsuit against the Department.  The district court dismissed her suit, concluding that her complaint failed to state a discrimination or retaliation claim.

While we affirm the district court's dismissal of the retaliation claim, we vacate the dismissal of the discrimination claims and remand for further proceedings.  Under our precedents, a court reviewing a pro se plaintiff's lawsuit generally must consider filings beyond just the complaint when deciding whether to dismiss the action.  The district court in this case carefully treated with Naz's discrimination claims, including by considering allegations in her opposition to the government's motion to dismiss; but it appears that the court did not take account of a potentially dispositive factual allegation in the opposition.  We thus vacate the dismissal and remand the case to permit the district court to assess in the first instance whether the allegation in Naz's opposition supports a different disposition of her discrimination claims, or whether there is some basis—such as breach of a court rule enforceable against a pro se plaintiff—for disregarding the allegation.

3

I.

A.

The following facts are drawn from the plaintiff's complaint and from "documents either attached to or incorporated" into it. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Because this case comes to us from the grant of a motion to dismiss the plaintiff's complaint, we assume the complaint's well-pleaded allegations to be true. And because she brought her complaint pro se, we give the complaint and other relevant filings a "liberal[]" construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

Farah Naz is a Muslim woman of Pakistani origin. From January 2017 to January 2021, she worked as an economist in the Department of Energy's Office of Energy Consumption and Efficiency Analysis. That office "projects industrial-energy-consumption trends and publishes its analyses in [Department] publications." *Naz v. Granholm*, 2023 WL 6389130, at *1 (D.D.C. Sept. 30, 2023). Naz's responsibilities included writing papers. When she began her tenure, her direct supervisor was Kelly Perl and her second-level supervisor was James Turnure. At the outset, Naz enjoyed a "cordial and productive relationship" with Perl. Compl. ¶ 5 (J.A. 16).

About nine months after she began working at the Department, Naz testified in support of the Equal Employment Opportunity (EEO) complaint of Christopher Dickerson, a colleague with whom Naz had a "close relationship." Compl. ¶ 6 (J.A. 16). Dickerson accused Perl of race discrimination, and Naz testified about what she perceived to be "rampant race discrimination that pervades" the Department. It is unclear

what ultimately happened with Dickerson's complaint, but his employment with the Department ended in March 2018.

In April 2018, Naz experienced a "sea change" in her working conditions and relationships. Compl. ¶ 8 (J.A. 16). Perl went from "cordial" to "hostile, antagonistic, and unproductive," threatening to fire Naz and screaming at her for what Naz considered ordinary conduct. Compl. ¶¶ 8, 12 (J.A. 16–17). On one occasion, Perl told Naz that "non-native people" like her often "have difficulty writing" and inquired whether she had "attended school in the United States." Compl. ¶ 11 (J.A. 16). Naz surmises that the "sea change" came about because Perl had learned of Naz's testimony against Perl in support of Dickerson's EEO complaint.

Naz asked Turnure for a transfer to a different supervisor. Turnure encouraged her to "explore other opportunities" and organized a meeting between Naz, Turnure, and a number of other individuals. Compl. ¶ 15 (J.A. 17). Before the meeting, though, Perl told Naz's colleagues that they should refuse to meet with her because she would spend "[their] valuable time complaining." Compl. ¶ 16 (J.A. 17). It appears that the transfer request was never granted.

In June 2018, Naz submitted a paper discussing the subject of irrigation in California. Perl told Naz that her paper was deficient in various ways: citations were missing, references in the bibliography were not in proper form, and the conclusion needed to be rewritten. Naz was surprised, as she had submitted a paper in May 2017 in a "substantially similar style and manner" and had received no criticisms. Compl. ¶ 27 (J.A. 18). Later that year, Naz asked Perl to nominate her for an award, but Perl declined to do so. Perl also denied Naz various training opportunities.

By November 2018, Perl had concluded that Naz's writing deficiencies were serious enough to warrant placing her in a performance plan. Naz reiterated her transfer request, but to no avail. In early December, Perl placed Naz on a 90-day performance plan. As a result of that action, Naz was unable to telework or benefit from alternative work schedules. In response, Naz filed an EEO complaint against Perl and accused Perl of discriminating and retaliating against her.

In January 2019, Naz resubmitted her California irrigation paper. Perl again gave her a "deficient and untimely" performance review in response. Perl also continued to deny Naz training opportunities and to direct slights at Naz, including commenting that Naz frowned too much during a meeting.

In March 2019, Peter Gross replaced Perl as Naz's supervisor. Despite the change, Naz's difficulties persisted. As it turned out, Gross allegedly knew about Naz's EEO complaint against Perl and was close with Turnure. Turnure—relatedly, Naz alleges—decided to reinstate the performance plan that Perl had previously imposed. The plan indicated that Naz's writing deficiencies continued to present a problem.

As Naz's supervisor, Gross gave Naz inconsistent directions and "micromanage[d]" and "bull[ied]" her. Compl. ¶¶ 65–66 (J.A. 21). He also denied her an "automatic" grade increase owed to all employees at her level. Compl. ¶ 71 (J.A. 21). Together with Turnure, Gross denied Naz the opportunity to telework or participate in alternative work schedules because of her performance plan. And he allegedly prevented Naz from completing her work by scheduling meetings on her "busy working days," sending her distractingly "long emails," and giving her "unrealistic deadlines." Compl. ¶¶ 74–76 (J.A. 21).

In October 2019, Naz filed another EEO complaint, this time against Gross for retaliating and discriminating against her.

As for the issues that had been raised about Naz's performance, Gross "constantly criticized" her work as "deficient and inaccurate," even though she thought it was "completed adequately." Compl. ¶¶ 58, 62 (J.A. 20). She also received a "Fails to Meet Expectations" rating for two of the four elements of her 2019 performance evaluation, eventually leading to Gross's placing her in a performance plan the following year. Compl. ¶¶ 69, 73 (J.A. 21).

In August 2020, after determining that Naz's performance would not improve, Gross issued her a notice of removal. Naz was given a chance to submit oral and written responses to the notice and appear before her supervisor, though her meeting with Gross resulted in her being humiliated and belittled. In January 2021, the Department terminated Naz's employment.

B.

In June 2022, Naz, proceeding pro se, brought this action against the Department. Her complaint alleges unlawful discrimination based on her race, gender, sex, religion, and national origin, as well as unlawful retaliation, all in violation of Title VII. She claims that the Department discriminated against her by terminating her employment and failing to promote her based on her protected characteristics, and that the

Department retaliated against her because of her testimony in support of Dickerson and her various EEO complaints.

The Department moved to dismiss the complaint for failure to state a claim. The district court granted the Department's dismissal motion.

With respect to Naz's claims of discrimination, the district court found "no facts in the complaint from which an inference of discrimination could be drawn." *Naz*, 2023 WL 6389130, at *3. The court acknowledged the complaint's allegation that Perl had said to Naz in April 2018 that "non-native people" like Naz often "have difficulty writing." *Id.* at *4 (quotation marks omitted). "But at the time of her termination," the court reasoned, "Naz had transferred away from Perl and had been working under a different supervisor, Gross, for nearly two years." *Id.* And "the complaint does not allege that Perl was a decisionmaker in Naz's termination," whereas "the apparent decisionmakers, Gross and Turnure, had ample justification to fire Naz based on her record of poor performance over time" as recounted in the complaint's allegations. *Id.* Relatedly, the court concluded that Naz failed to state a claim of discriminatory non-promotion because she did not adequately allege a causal connection to discrimination as opposed to performance problems. *Id.* Finally, with respect to Naz's retaliation claim, the court similarly held that Naz failed to allege "the presence of a causal link" between her protected EEO activities and the adverse actions she allegedly suffered. *Id*. at *5.

Naz now appeals. The government moved for summary affirmance, and Naz opposed the government's motion in a pro se filing. A panel of this court denied the government's motion and appointed an amicus curiae counsel to present arguments in favor of Naz's position in her appeal. Naz notified the court

that she would rely on appointed amicus's briefing and would not submit additional briefing of her own.

## II.

## A.

We review the district court's dismissal of Naz's complaint de novo. *King v. Jackson*, 487 F.3d 970, 972 (D.C. Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). In assessing whether that standard is met, we must draw all reasonable factual inferences in the plaintiff's favor. *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995).

Because Naz is a pro se plaintiff, we hold her to "less stringent standards than" those applicable to "formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). So, "when weighing whether a pro se plaintiff has stated a claim"—the question we face here—"courts must treat technical deficiencies in the complaint leniently and scrutinize the entire pleading to determine if any legally cognizable claim can be found." *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024) (cleaned up). And our "court has explained the liberal standard extends to consider[ing] supplemental material filed by a pro se litigant in order to clarify the precise claims being urged—including facts set forth in a plaintiff's opposition to a motion to dismiss." *Id.* (internal quotation marks omitted). In that regard, "[w]e have previously held that a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive

to a motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).

In view of those governing standards, we must vacate the district court's grant of dismissal as to Naz's discrimination claims. In explaining the dismissal of Naz's claim of discriminatory termination, the court took cognizance of the complaint's allegation that Naz's initial supervisor Perl remarked to Naz that "non-native people" like Naz "have difficulty writing." The court did not doubt the statement's discriminatory character, but explained that, by the time of Naz's termination, she had been working for a different supervisor, Gross, for close to two years. The court observed that the complaint did not allege that Perl played a decisionmaking role in Naz's termination, and that the evident decisionmakers, including Gross, had ample basis to terminate Naz based on concerns about her performance. *Naz*, 2023 WL 6389130, at *4. Similarly, with respect to Naz's claim of discriminatory non-promotion, the court reasoned that, per her allegations, she was placed on performance plans that disqualified her for a promotion due to legitimate, performance-related concerns. *See id.* at *3–*4.

The court's analysis understandably assumes that, if there were an allegation that a decisionmaker such as Gross had made seemingly discriminatory statements like the one allegedly made by Perl—especially in some proximity to the relevant decisions—the complaint might have stated claims of discriminatory termination and non-promotion. In fact, there was such an allegation. Naz alleged that, in May or June 2019, she asked Gross—who by then had become her supervisor—whether during the month of Ramadan, he could adjust the start time of their weekly team meetings by 30 minutes and grant her a flexible work schedule to accommodate her religious

observance. Opp. to Mot. to Dismiss at 7, *Naz v. Granholm*, No. 22-cv-1730 (D.D.C. Feb. 2, 2023), Dkt. No. 23. But "instead of accommodating m[y] request," Naz alleges, Gross "bluntly replied to me that [the Department] is a workplace, not a religious institution, and he does not believe in Islamic religious extremism." *Id.*

That allegation, which we must credit at this stage, supports Naz's claims of discrimination based on her religion. And Gross's alleged statement took place within a year of his placing Naz on a performance plan and little more than a year before he gave Naz notice of her removal. *Cf. Morris v. McCarthy*, 825 F.3d 658, 669–70, 672 (D.C. Cir. 2016) (reversing grant of summary judgment to employer based in part on statement suggesting discriminatory attitude that was made two to three years before challenged suspension).

The district court's opinion, though, does not expressly take account of Naz's allegation about Gross's statement. Granted, Naz did not include the allegation in her complaint, instead stating it in her opposition to the Department's motion to dismiss. But as noted, our precedents generally call for considering a pro se plaintiff's allegations in an opposition to a dismissal motion even if they are not in the complaint. *See Spence*, 109 F.4th at 537–48; *Brown*, 789 F.3d at 152. And here, the district court thoughtfully gave Naz the benefit of that treatment as a pro se plaintiff when it addressed a separate argument advanced by Naz later in her opposition: the court "address[ed] the argument that Naz's placement on several performance-related plans disqualified her from promotion to which she otherwise would have applied," even "though this argument is not explicit in the complaint but is instead contemplated by Naz's response to the motion to dismiss." *Naz*, 2023 WL 6389130, at *4 (citing Opp. to Mot. to Dismiss at 65). But the court did not appear to consider Naz's allegation

earlier in the same document about Gross's pointed rebuff of her request for a religious accommodation. And because that allegation has relevance to whether Naz states a claim of discrimination, we must vacate the district court's dismissal in that regard.

On remand, the district court can take that allegation into account or could seek to explain why it may be disregarded. That kind of assessment is more appropriately conducted by the district court in the first instance. While our precedents generally require consideration of a pro se plaintiff's allegations in an opposition to a motion to dismiss, the decision from which we drew that expectation "do[es] not suggest that a District Court must cull through every filing of a *pro se* litigant to preserve a defective complaint." *Richardson*, 193 F.3d at 549; *see Brown*, 789 F.3d at 152 (citing *Richardson*, 193 F.3d at 548, for the proposition that a pro se complaint should be considered in the context of "all filings"). If, for instance, accounting for a pro se plaintiff's filing would substantially prejudice the defendant, there may be cause for disregarding it. *See Brown*, 789 F.3d at 152. And here, Naz's opposition is a lengthy document including many attachments. District courts retain discretion to manage their dockets, enforce standing orders, and apply local rules governing party submissions in a manner consistent with the obligation to give appropriate leeway to pro se parties. *Cf. Oviedo v. Washington Metro. Area Transit Author.*, 948 F.3d 386, 397 (D.C. Cir. 2020) ("While we liberally construe *pro se* pleadings, *pro se* litigants do not have a license to ignore the Federal Rules of Civil Procedure.") (internal quotation marks omitted). The district court can give consideration to such matters on remand if it opts to do so.

12

B.

We recognize that the court-appointed amicus who supported Naz did not, in its briefing before us, specifically point to the allegation in Naz's opposition about Gross's reaction to her request for a religious accommodation. Naz, though, had pointed our court to that exact allegation: she reiterated and relied on it in her pro se filing opposing the Department's motion for summary affirmance. *See* Opp. to Mot. for Summ. Aff. at 7, *Naz v. Wright*, No. 23-5237 (D.C. Cir. Feb. 2, 2024). While amicus did not repeat that particular reference in its briefing, it made a fulsome argument that Naz's allegations of discrimination, including based on her religion, were sufficient to state a claim. We are unaware of any precedent suggesting that a party who argues that allegations suffice to survive a motion to dismiss must reference every single allegation supporting that showing or else risk forfeiture of an unmentioned allegation. *See Flyers Rights Educ. Fund., Inc. v. FAA*, 864 F.3d 738, 748 n.6 (D.C. Cir. 2017) ("[A] party cannot forfeit or waive recourse to a relevant case just by failing to cite it."); *cf. Yee v. City of Escondido*, 503 U.S. 519, 535 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."). And that notion has particular salience in a case involving a pro se party, one who in fact drew our court's attention to the precise allegation in issue.

Our dissenting colleague nonetheless would disregard Naz's allegation that Gross, when explaining his refusal of her request to accommodate her observance during Ramadan, said "he does not believe in Islamic religious extremism." Our colleague does not suggest that, if that allegation is considered, Naz still failed to state a claim of discrimination based on her religion. Instead, our colleague would overlook the allegation

because appointed amicus did not specifically reference it. According to our colleague, "party-presentation principles" thus require disregarding the allegation. Dissenting Op. 1. We disagree.

It is true that appellate courts "essentially [sit] as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983); *see* Dissenting Op. 3. Here, the relevant "legal question[] presented" by Naz and appointed amicus is whether her allegations adequately stated a discrimination claim, including based on her religion. On that score, amicus, upon observing that Naz "is a member of multiple protected classes" including due to her "religion (Islam)," argued that she "faced a torrent of criticism and discrimination"—some of which "explicitly implicated [her] protected characteristics"—and that Gross "continued the pattern of discrimination" after becoming her supervisor. Amicus Opening Br. 19–21. To be sure, in the course of that argument, amicus did not specifically point to Gross's alleged comment about "Islamic religious extremism" (although Naz, as noted, did when opposing summary affirmance). Our taking note of that allegation, though, amounts not to "raising a new issue" unraised by a party, but to "adducing additional support" for an already-raised issue, "much like citing a case" uncited by the parties. *Koch v. Cox*, 489 F.3d 384, 391 (D.C. Cir. 2007). After all, "not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research." *Carducci*, 714 F.2d at 177.

Our dissenting colleague emphasizes that the allegation about Gross's "Islamic religious extremism" remark appears in Naz's opposition to the Department's dismissal motion, not her complaint. Dissenting Op. 5–8. In our colleague's view, it is

unfair to expect the government to account for allegations raised outside the complaint, especially because of the length of Naz's opposition and because the government ostensibly had no cause to anticipate that our court might consider allegations made in it. Those concerns have no purchase in the context of this case.

To start, our precedents, as explained, establish that the "liberal pleading standard" applicable to pro se litigants generally calls for considering "facts set forth in a plaintiff's opposition to a motion to dismiss" when assessing whether to grant a dismissal for failure to state a claim. *Spence*, 109 F.4th at 537–38; *see Brown*, 789 F.3d at 152. And there is no uncertainty about whether we ought to apply that understanding in this appeal or about the fairness to the government of doing so: the government itself says we should.

The government's initial submission to our court in this appeal was its motion for summary affirmance. At the outset of that document, the government explained that the relevant "facts are derived from Naz's complaint *and her opposition to the government's motion to dismiss* and are assumed true." Mot. for Summ. Aff. at 2, *Naz v. Wright*, No. 23-5237 (D.C. Cir. Dec. 15, 2023) (emphasis added). In keeping with that understanding, the government's motion repeatedly referenced—on nearly every page—Naz's opposition and its attachments. *Id.* at 2–4, 6–12, 17–18. The government thus consistently referred to facts alleged in her "complaint *and opposition*," *id.* at 6, 10–11 (emphasis added), and it even invoked "new allegations" made "in her opposition" in its own support, *id.* at 8–9. At one point, after noting that Naz "alleged that she was subjected to discriminatory termination of employment" including "because she is . . . a Muslim," the government said: "while Naz's complaint *and opposition to the motion to dismiss* enumerate manifold allegations against

individuals affiliated with the Agency, *neither* contain[s] factual, nonconclusory allegations plausibly linking Naz's termination—or any other personnel action by the Agency—to her protected characteristics." *Id.* at 5–6 (emphasis added). That is an affirmative invitation to identify allegations in Naz's opposition that fill the asserted void. The allegation in her opposition about Gross's "Islamic religious extremism" remark does just that.

In these circumstances, there could be no unfairness to the government in relying on that allegation: having urged us to affirm the district court on the premise that the allegations in Naz's opposition should be considered, the government could hardly object to our pointing to an allegation in that document that cuts in the other direction. Indeed, because the government has affirmatively invited reliance (and has even itself relied) on the allegations in Naz's opposition, disregarding a salient allegation in that document would disserve—not promote—the principle of party presentation. After all, the "party presentation principle is supple, not ironclad." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020); *see Al-Tamimi v. Adelson*, 916 F.3d 1, 6–7 (D.C. Cir. 2019) (deviating from general rule that argument omitted from appellant's opening brief is forfeited because appellant had previously raised the argument in support of summary reversal and there was no unfairness to appellee).

Our dissenting colleague submits that it is unfair to the district court to rely on Naz's allegation about Gross's "Islamic religious extremism" remark because the allegation appears in an "obviously non-compliant" filing. Dissenting Op. 8–9. District courts undoubtedly face substantial burdens when confronted with voluminous, overlength, and scattershot filings by pro se litigants, as the court did here. But rather than reject Naz's opposition, the district court, as the government

explains, "permitted [her] to file" it and then "clarified that it considered [the] opposition when deciding the Agency's motion to dismiss." Mot. for Summ. Aff. at 18. Even if the court need not have done so, it thoughtfully gave Naz the benefit of that consideration as a pro se plaintiff. And because Naz's opposition, as the government acknowledges, is thus part of the record properly before us, there is no basis to disregard a seemingly material allegation set forth in it. Considering Naz's opposition respects the district court's choice to accept it, as does remanding to enable that court to decide in the first instance how (and whether) to engage with the opposition's allegation about Gross's "Islamic religious extremism" remark.

## C.

Finally, while that allegation, as explained, potentially bears on Naz's claims of discriminatory termination and non-promotion, it has no evident relevance to the district court's grounds for dismissing her retaliation claim. As to that claim, the district court carefully explained why Naz failed to adequately allege causation. *Naz*, 2023 WL 6389130, at \*4–\*5. We see no basis to set aside the court's persuasive analysis in that regard.

\* \* \* \* \*

For the foregoing reasons, we affirm the district court's dismissal of the retaliation claim, but we vacate the dismissal of the discrimination claims and remand for further proceedings consistent with this opinion.

*So ordered.*

KATSAS, *Circuit Judge*, concurring in part and dissenting in part: Farah Naz worked as an economist for the Department of Energy. After she received poor performance reviews for over two years, the Department terminated her employment. Naz sued *pro se*, alleging unlawful retaliation and discrimination. The district court dismissed the case for failure to state a claim. My colleagues correctly affirm the dismissal of the retaliation claims, and they find no fault with how the district court analyzed the discrimination claims as pleaded in the complaint.

Nonetheless, my colleagues vacate the dismissal of the discrimination claims, based on a contestable argument raised neither by Naz nor by the *amicus curiae* whom we appointed to support her position. Specifically, my colleagues conclude that the district court erred in not plucking an allegation out of Naz's 148-page opposition to the government's motion to dismiss, deeming that allegation to be part of Naz's complaint, and then considering whether it tipped the balance against dismissal. Rather than inject that contention into this appeal, I would instead apply ordinary party-presentation principles, which compel an affirmance.

I

The complaint here alleges the following: Naz is a Muslim woman of Pakistani origin. In January 2017, she began work as an economist for the Department of Energy. Initially, her direct supervisor was Kelly Perl, who in turn was supervised by James Turnure. In March 2019, Peter Gross replaced Perl as Naz's direct supervisor. Beginning in April 2018, these three supervisors consistently criticized Naz's performance. Among other things, they found her writing unsatisfactory, gave her low evaluations, and placed her on performance improvement plans. The Department fired Naz in January 2021.

Proceeding *pro se*, Naz filed this lawsuit under Title VII of the Civil Rights Act. She alleges that agency officials retaliated against her for (1) testifying against Perl in an internal investigation in October 2017 and (2) filing her own complaints against Perl in December 2018 and Gross in October 2019. Naz further alleges that the agency unlawfully discriminated in firing her and denying her a promotion. The government filed a motion to dismiss or for summary judgment. In response, Naz filed a 148-page opposition, together with over 1,000 pages of attached exhibits.

The district court granted the motion to dismiss. The court explained that the retaliation claims rested entirely on the asserted temporal proximity between Naz's protected activity and her extended difficulties at work. J.A. 318–19. In the court's view, temporal proximity was not enough to support a plausible inference of retaliation: Naz's testimony against Perl occurred six months before any of her difficulties began, and she filed her own complaints well after supervisors had already documented substantial concerns with her written work. *Id.* at 317–18. As for discrimination, the district court noted that the complaint contained only one allegation touching on a protected characteristic—that Perl had made a disparaging comment about the writing skills of "non-native people" in April 2018. *Id.* at 315. According to the court, that comment did not support a plausible inference that different decisionmakers fired Naz because of her national origin or race more than two years later. *Id.*

Naz appealed, again *pro se*. This Court appointed an *amicus* to brief and argue the appeal in support of her position. Naz declined to file a brief or to participate in the argument, instead relying entirely on the presentation of her *amicus*.

3

II

The district court dismissed this case on the ground that Naz's complaint does not support plausible inferences of unlawful retaliation or discrimination. In this Court, the *amicus* contends that the complaint does support such plausible inferences. My colleagues rightly affirm as to the retaliation claims. And they take no issue with the district court's analysis of the discrimination claims as pleaded in the complaint. Yet they nonetheless vacate the dismissal of the discrimination claims on a different ground *not* properly raised by Naz or her *amicus*—that the court erred by not considering a factual allegation made by Naz in opposing the government's motion to dismiss. In my view, that decision is mistaken.

At every turn, my colleagues rest on the premise that ordinary procedural rules must be tempered for *pro se* litigants. In many contexts, we do read *pro se* filings charitably. But where a *pro se* appellant is supported by a court-appointed *amicus*, we have never relaxed the basic rule that the appellant or the *amicus* must distinctly identify each ground on which reversal is sought. In such cases, we routinely decline to consider points not raised in the briefs, *e.g.*, *Harris v. Dep't of Transp. FMCSA*, 122 F.4th 418, 426 (D.C. Cir. 2024); *United States v. O'Neal*, 844 F.3d 271, 277 n.3 (D.C. Cir. 2016); points first raised in a reply brief, *e.g.*, *Palmieri v. United States*, 896 F.3d 579, 586–87 (D.C. Cir. 2018); or points developed in only skeletal fashion, *e.g.*, *Rudometkin v. United States*, 140 F.4th 480, 491–92 (D.C. Cir. 2025); *Abdelfattah v. DHS*, 787 F.3d 524, 532 (D.C. Cir. 2015). For good reason: As then-Judge Scalia explained, "appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983). Moreover, abandoning ordinary preservation rules in cases like

this puts the appellee at quite an unfair disadvantage; it must respond to an *amicus* brief prepared by a skilled legal adversary and, on top of that, it must scour the record to identify and proactively address any unbriefed issues that a panel might raise on its own as a basis for reversal or vacatur.

My colleagues respond that the *amicus* did raise the relevant points with enough specificity, in contending that Naz's "allegations of discrimination" were "sufficient to state a claim." *Ante* at 12. My colleagues invoke an asserted rule that a district court "generally" must consider allegations made by a *pro se* plaintiff in opposing a motion to dismiss. *Id.* at 11. Given that asserted rule, my colleagues claim to be just measuring pleading sufficiency against all of the relevant allegations. *Id.* at 12. And, they say, a court may consider "unmentioned allegation[s]" in support of a raised claim—or indeed "'any argument in support of that claim.'" *Id.* (quoting *Yee v. City of Escondido*, 503 U.S. 519, 535 (1992)).

For several reasons, I cannot agree. To begin with, regardless of whether items are labeled as claims, arguments, or allegations, this Court routinely applies forfeiture principles to bar consideration of points that are sufficiently distinct from ones that an appellant has properly teed up. *See*, *e.g.*, *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 433–34 (D.C. Cir. 2022) ("argument" forfeited because not raised below); *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 499 (D.C. Cir. 2015) ("argument" forfeited due to its skeletal presentation). Likewise, we have confirmed that *Yee* does not restrict forfeiture to points that are labeled as claims rather than as arguments. *See United States v. Little*, 123 F.4th 1360, 1369–70 (D.C. Cir. 2024). Here, the allegation that my colleagues invoke as the basis for vacatur (whether labeled as a claim or argument) seems to me quite distinct from those pressed by Naz or her *amicus*. As the district court explained,

the complaint seeks to rest discrimination claims on a single disparaging comment about "non-native people" allegedly made by Perl in April 2018. J.A. 315 (district-court opinion); *see id.* at 16 (complaint). In his brief, the *amicus* likewise highlights that sole comment in arguing that the complaint states a discrimination claim. Brief of Court-Appointed *Amicus Curiae* in Support of Appellant at 20, *Naz v. Wright*, No. 23-5237 (July 29, 2024). In contrast, my colleagues seek to construct a discrimination claim from a different comment about "Islamic religious extremism" allegedly made by Gross no sooner than May 2019. *Ante* at 10; *see* ECF Doc. 23, at 7 (Feb. 2, 2023) (opposition to motion to dismiss). That statement, made at a different time by a different decisionmaker, suggests a different kind of discrimination— disparate treatment because of religion as opposed to national origin or race. And in Title VII cases, pressing a claim about one kind of discrimination does not suffice to preserve claims about a different kind. *See, e.g.*, *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 527–28 (D.C. Cir. 2019).

Moreover, the allegation invoked by my colleagues appears only in the opposition to the dismissal motion, and the distinction between factual allegations made in a pleading and those made in other filings is important. Federal Rule of Civil Procedure 8 requires the plaintiff's "pleading"—*i.e.*, the complaint itself—to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also id.* Rule 7(a)(1) ("complaint" is the "[o]nly" pleading "allowed" for the plaintiff absent court order). Likewise, Rule 12(b) makes clear that defenses attach to "claim[s] for relief in any *pleading*" (emphasis added). And Rule 15 sets forth the requirements for filing amended or supplemental pleadings. There is no general principle that *pro se* plaintiffs may flout these rules by making new factual allegations in their district-court briefs. To the contrary,

"[w]hile we liberally construe *pro se* pleadings, *pro se* litigants do not have a 'license' to 'ignore the Federal Rules of Civil Procedure.'" *Oviedo v. WMATA*, 948 F.3d 386, 397 (D.C. Cir. 2020) (quoting *Moore v. USAID*, 994 F.3d 874, 876 (D.C. Cir. 1993)); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) (Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

My colleagues counter with *Richardson v. United States*, 193 F.3d 545 (D.C. Cir. 1999), and *Brown v. Whole Foods Market Group, Inc.*, 789 F.3d 146 (D.C. Cir. 2015), where we reversed district courts for dismissing *pro se* complaints without considering allegations made while opposing a dismissal motion. *Ante* at 8–9. Neither case establishes that such allegations are generally like those made in the complaint itself, much less that we should raise that contention ourselves. In *Richardson*, we reversed only because (1) the plaintiff "could have amended his claim as of right" when he opposed the motion to dismiss, (2) the district court "clearly understood that [the plaintiff] both recognized the need for and attempted to make a change to his original complaint," and (3) allowing the attempted amendment would not prejudice the government. 193 F.3d at 548–49. Under those circumstances, we concluded that the district court should have treated the new allegations as "an amendment to [the] complaint" under Rule 15. *Id.* at 549. Our holding was narrow; we stressed that it rested on "[t]hese factors, taken together," and we disclaimed any suggestion "that a District Court must cull through every filing of a *pro se* litigant to preserve a defective complaint." *Id.* In turn, *Brown* merely applied *Richardson*. *See* 789 F.3d at 152. Moreover, the *amicus* in *Brown* affirmatively urged this Court to consider new factual allegations raised in the eleven-page brief opposing dismissal. Brief of Court-Appointed *Amicus Curiae* on Behalf of Appellant at 6–9, *Brown v. Whole Foods Mkt. Grp., Inc.*, No.

13-7156 (July 8, 2014). And the defendant, specifically citing those allegations, argued only that they failed to state a claim. Brief of Defendant-Appellee Whole Foods Market Group, Inc. at 10–12 (Aug. 20, 2014). So both parties invited us to consider the new allegations.

In this case, the district court was not required to consider new factual allegations made by Naz in opposing the dismissal motion. None of the considerations flagged in *Richardson* is present here. First, by obtaining a 45-day extension of time to file her opposition, Naz lost her opportunity to amend the complaint as a matter of right. *See* Fed. R. Civ. P. 15(a)(1)(B); *Sevier v. Lowenthal*, 302 F. Supp. 3d 312, 324 (D.D.C. 2018). Second, neither the opposition itself, nor anything else filed by Naz, alerted the court to "the need for" any specific "change to [her] original complaint." *Richardson*, 193 F.3d at 549. Third, forcing the government to engage new allegations in the opposition—a disjointed, rambling 148-page document, stacked on top of some 1,063 pages of exhibits—would be highly prejudicial. That filing violates many basic procedural rules. Treated as an opposition, it exceeds the 45-page limit by more than 200 percent. *See* D.D.C. Civ. R. 7(e). Treated as a motion to amend, it gives no sense of what proposed material is new, and it fails to reproduce the original and proposed amended pleadings. *See id.* Rule 7(i). Treated as an amended complaint, it contains no "short and plain statement" of any claim, Fed. R. Civ. P. 8(a)(2), and it improperly attaches hundreds of pages of exhibits that are not "essential to determination of the action," D.D.C. Civ. R. 5.1(e). Despite my colleagues' contrary suggestion, we have never said that all these rules must give way to an overarching "obligation to give appropriate leeway to pro se parties." *Ante* at 11. These problems may explain why the able *amicus* in this case—the same lawyer who prevailed in *Brown* by focusing this Court on new allegations in the brief opposing dismissal there—did not

ask us to consider the same document here. And because neither Naz nor her *amicus* asked us to consider factual allegations raised in the opposition, the government lost the opportunity to explain why, in all likelihood, doing so would be inappropriate in this case.

My colleagues find no prejudice to the government because its motion for summary affirmance referenced Naz's opposition to the motion to dismiss. *Ante* at 14–15. But the opening merits brief presents the appellant's case and provides the focus for "argumentative back and forth" as the briefing progresses. *Entergy Ark., LLC v. FERC*, 134 F.4th 576, 581 (D.C. Cir. 2025). Requiring an appellee to respond not only to the opening brief but also to its own prior submissions—especially ones that an appellant and her supporting *amicus* have chosen not to address—frustrates this adversarial process. It also is hard to square with yet another well-established forfeiture rule, that a party cannot incorporate into its opening brief, by reference or impliedly, "an argument made at an earlier stage of the litigation." *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019).

My colleagues also note that Naz mentioned the relevant allegation in opposing the government's motion for summary affirmance. *Ante* at 12. But Naz referenced the allegation in a single paragraph containing no record citations in a document running over three-hundred pages. *See* Response in Opposition to Motion for Summary Affirmance at 7*, Naz v. Wright*, No. 23-5237 (Feb. 2, 2024). And the allegation was never mentioned where it matters—in an opening merits brief.

One final consideration involves fairness to the district court. My colleagues take no issue with how that court evaluated the complaint that was properly before it. Yet they fault the court for not plucking out of an obviously non-

compliant, 148-page opposition one factual allegation that takes up about one page of that document. *Ante* at 9–11; *see* ECF Doc. 23, *supra*, at 7. This case seems to me clearly one where the district court should not be required to "cull through every filing of a *pro se* litigant to preserve a defective complaint." *Richardson*, 193 F.3d at 549. Or to quote Judge Easterbrook, it is not one where we should make the district court behave "like pigs, hunting for truffles buried in" bloated and procedurally improper filings. *Albrechtsen v. Bd. of Regents of the Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) (cleaned up). My colleagues note that the district court did charitably choose to consider one allegation made by Naz only in opposing the dismissal motion. *Ante* at 10–11, 15–16; *see* J.A. 316. But it hardly "respects the district court's choice," *ante* at 16, to conclude that, because that court chose to consider one allegation made in the opposition, it therefore needed to slog through more than a thousand additional pages.

In fairness, I should note that my colleagues do not foreclose the district court on remand from rejecting the opposition as procedurally improper many times over. *Ante* at 11 ("the district court can give consideration to such matters on remand if it opts to do so"). Nonetheless, I would not have ordered the court to consider that question, in a case where neither Naz nor her *amicus* asked us to rule on that basis.

\* \* \* \*

The *amicus* here sought reversal on the ground that the *complaint* stated claims on which relief could be granted. I would apply ordinary party-presentation principles, reject that contention, and affirm across the board. I would thus not remand based on the dubious and unpreserved contention that the district court was required to consider a distinct allegation buried in a procedurally improper opposition brief.